UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD EUGENE SEARS

       Plaintiff,

vs.                                                CASE NO.:3:07-cv-5-J-25MCR
CARRIER CORPORATION and
UNITED TECHNOLOGIES CORP

       Defendants.
_____\

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
DEFENDANT CARRIER'S MOTION TO DISMISS
COUNT I OF THE SECOND AMENDED COMPLAINT, ETC.**

This memorandum is in opposition to Defendant Carrier's Motion to Dismiss Count I of Plaintiff's Second Amended Complaint, etc. (Carrier's Motion, Doc. 84).

**I.**     **PREEMPTION**

Carrier's Motion is based a misunderstanding of ERISA's preemption doctrine as evidenced by its argument that:

> Plaintiff's state law breach of contract claim is either related to the ERISA *<u>claims</u>* and thus preempted, or it is not related and the Court does not have jurisdiction over it.

Carrier's Motion, p.3, ¶8 (italics, underline added)

Carrier confuses and conflates the distinction between an ERISA *plan,* on the one hand, and a legal claim seeking ERISA *benefits,* on the other. The fact that Carrier's

1

breaches of Plaintiff's incentive compensation contracts (alleged in Count I) may provide circumstantial evidence of his ERISA *claims* under Counts II and III is not a basis for preemption of the breach of contract claims. As the preemption statute states, certain state law claims are "preempted" by ERISA only:

> insofar as they may now or hereafter relate to any employee benefit *plan*....

Id. 29 U.S.C. §1144(a) (emphasis added)[1]

The Supreme Court has made clear that the argument advanced by Carrier, i.e., that the State law claim must be preempted merely because it relates to Plaintiff's ERISA *claims* – has no merit. Instead, in order to be preempted, the State law claims must relate to an ERISA *plan*:

> Appellant's basic argument is that any state law pertaining to a type of employee benefit listed in ERISA necessarily regulates an employee benefit plan, and therefore must be pre-empted. Because severance benefits are included in ERISA, see 29 U. S. C. § 1002 (1)(B), appellant argues that ERISA pre-empts the Maine statute. In effect, appellant argues that ERISA forecloses virtually all state legislation regarding employee benefits. <u>This contention fails, however, in light of the plain language of ERISA's pre-emption provision, the underlying purpose of that provision, and the overall objectives of ERISA itself.</u>
>
> The first answer to appellant's argument is found in the express language of the statute. <u>ERISA's pre-emption provision does not refer to state laws relating to "employee benefits," but to state laws relating to "employee benefit *plans*":</u>

---

[1] Section 1144 makes clear that "'State law' includes all laws [and] *decisions*... having the effect of law, of any State." Id. 29 U.S.C. §1144(c). In other words, any statute, or even case law or common law, which "relate[s] to any employee benefit plan" will be preempted by Section 1144(a).

> "The provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any *employee benefit plan* described in § 1003(a) of this title and not exempt under § 1003(b) of this title." 29 U. S. C. § 1144(a) (emphasis added).
>
> We have held that the words "relate to" should be construed expansively: "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-97 [**2216] (1983). <u>Nothing in our case law, however, supports appellant's position that the word "plan" should in effect be read out of the statute.</u>

<u>Id.</u> <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 8 (1987)
(italics in original, underline added)

The "State law claim" in Plaintiff's Count I alleging breach of contract is based on Florida's decisional law on contracts, including a claim for unpaid wages, recognized in Section 448.08, Florida Statutes. (Second Amended Complaint, Doc. 72, ¶38)[2]. Plaintiff's common law contract claim for unpaid wages is not *premised on* any ERISA plan. Carrier's representation to the Court, which makes the contrary claim, is simply incorrect:

> Here, Plaintiff's breach of contract claim is not only related to an ERISA plan, <u>it is premised on an ERISA plan</u>.

Carrier's Motion, p.3, ¶9 (underline added)

Count I of Plaintiff's Complaint, consisting of paragraphs 37-39, does not even reference ERISA, let alone rely on it. The breaches are based on Florida's common law of contract and on case law regarding unpaid wages, and require no analysis or interpretation

---

[2]The Second Amended Complaint is hereafter referred to as the Complaint, referring to Document 72.

of ERISA law. Moreover, the State laws here will in no way interfere with or conflict with ERISA's statutory scheme. As the Supreme Court stated in Fort Halifax:

> We have demonstrated, supra, however, [that the argument in favor of preemption has] no force with respect to a state statute that, as here, does not establish a plan. Such a statute generates no program activity that normally would be subject to ERISA regulation. Enforcement of the Maine statute presents no risk either that an employer will evade or that a State will dislodge otherwise applicable federal regulatory requirements. Nor is there any prospect that an employer will face difficulty in operating a unified administrative scheme for paying benefits.
>
> ***
>
> ERISA pre-emption analysis "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system." Alessi v. Raybestos-Manhattan, Inc., 451 U.S., at 522. The argument that ERISA pre-empts state laws relating to certain employee benefits, rather than to employee benefit *plans*, is refuted by the express language of the statute, the purposes of the pre-emption provision, and the regulatory focus of ERISA as a whole. If a State creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems. n13 Since the Maine severance payment statute raises no danger of such conflict, we hold that the statute is not pre-empted by ERISA.

Id., 482 U.S. at 17,19 (1987)
(italics in original, underline added)

Carrier's reliance on the Supreme Court's ruling in Ingersoll-Rand Co. v. McClendon, 111 S.Ct. 478 (1990) is misplaced. Carrier argues that the Ingersoll-Rand decision supports its claim that Plaintiff's breach of contract claim for unpaid wages is preempted by ERISA:

> The Supreme Court in *Ingersoll* stated that causes of action that make specific reference to, and are premised on the existence of, and employee benefit plan necessarily "relate to" such a plan and are, as a result, preempted by ERISA. 111S.Ct. at 483.

Id. Carrier Motion, p.6

Carrier has failed, however, to inform this Court of the *facts* in Ingersoll-Rand, which make it easy to understand why the State law in that case *was* preempted, and why the State law claim in *this* case is *not*:

> The Texas cause of action <u>makes specific reference to</u>, and indeed <u>is premised on</u>, the existence of <u>a pension plan</u>. In the words of the Texas court, the cause of action "allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." 779 S.W.2d at 71. <u>Thus, in order to prevail, a plaintiff **must** plead, and the court **must** find, **that an ERISA plan exists** and the employer had a pension-defeating motive in terminating the employment.</u>  Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan.
>
> McClendon argues that the pension plan is irrelevant to the Texas cause of action because all that is at issue is the employer's improper motive to avoid its pension obligations. <u>The argument misses the point, which is that under the Texas court's analysis **there simply is no cause of action if there is no plan.**</u>

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990)
(bold, underline added)

Quite unlike the situation in Ingersoll-Rand, the breach of contract claim in the immediate case does not rely upon any ERISA plan and, *un*like the Texas statute, requires

5

no showing of any motive whatsoever. In Ingersoll-Rand, the District Court was dealing with a Texas statute that made it illegal for an employer to terminate an employee *in order to avoid having to pay him pension benefits*, i.e., it required proof of motive. In other words, the Texas statute mirrored the prohibition of Section 510 of ERISA, which makes it clear why the Texas statute was deemed preempted by 29 U.S.C. Section 1144(a):

> Even if there were no express pre-emption in this case, the Texas cause of action would be pre-empted because it conflicts directly with an ERISA cause of action. McClendon's claim falls squarely within the ambit of ERISA § 510, which provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U. S. C. § 1140 (emphasis added).
>
> By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits. S. Rep. No. 93-127, pp. 35-36 (1973); H. R. Rep. No. 93-533, p. 17 (1973). We have no doubt that this claim is prototypical of the kind Congress intended to cover under § 510.

Ingersoll-Rand 498 U.S. at 143

Unlike the Texas law at issue in Ingersoll-Rand, Florida's judicially created law regarding contracts and actions for unpaid wages makes no reference to, and requires no interpretation of, any ERISA provisions. The Court specifically noted in Ingersoll-Rand that State laws of this type would *not* be preempted by ERISA:

6

> We are *not* dealing here with a generally applicable statute <u>that makes no reference to</u>, or indeed <u>functions irrespective of</u>, the existence of an ERISA plan.

<u>Ingersoll-Rand Co.</u> 498 U.S. at 139 (underline, italics added)

In the immediate case, the Defendants have made the clever but incorrect argument that because Plaintiff's ERISA claims are partially premised on his breach of contract claims, that the *converse* must also be true: <u>i.e.</u>, that Plaintiff's "...claim for breach is premised on the ERISA plan." Carrier's Motion, p.7. Carrier has provided no support for its implied argument that because an *ERISA claim* might be to some extent premised on a *State law claim* that the State law claim is preempted – even though the State law claim is in no way premised on the ERISA claim. The preemption statute does not address this situation and it is illogical to assume that it should. *See* 29 USCS § 1144(a), *and see* <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 522 (1981) ("As we recently reiterated, "[pre-emption] of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons -- either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.').

In this case, the breach of contract claims can and will be proved without any reference to and without any mention of the Defendants' larger motive of interfering with Plaintiff's ERISA benefits or retaliating against him for engaging in protected activity, <u>i.e.</u>, the claims in Counts II and III. The jury will not hear about Plaintiff's ERISA claims, nor will they need to understand how the ERISA plans work. By their very nature Plaintiff's

breach of contract claims require no showing of *any* motive. In fact, the Defendant's motive is not relevant to Plaintiff's breach of contract claims or to Carrier's defense of those claims.

Carrier has similarly misplaced its reliance upon the Supreme Court's decision in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), claiming:

> A common law cause of action for breach of contract is preempted if the contract claim is related to an ERISA plan.

Carrier's Motion, p.7

While this is a true statement of the law, it has no applicability to the facts of this case. As the Supreme Court noted in that case:

> The common law causes of action raised in Dedeaux's complaint, <u>each based on alleged improper processing of a claim for benefits under an employee benefit plan</u>, undoubtedly meet the criteria for pre-emption under § 514(a).

Pilot Life Ins. 481 U.S. at 48

In marked contrast with the plaintiff in Pilot Life, Mr. Sears is *not* alleging that Carrier improperly processed a claim for benefits *under an employee benefit plan*. He is alleging in Count I that Carrier breached its contractual obligation to pay him incentive compensation amounting to unpaid wages. He further alleges that the incentive compensation is *not* related to (i.e., not owing under) any ERISA plan, but is simply a payroll practice constituting ordinary income. Complaint at ¶13. Carrier has not offered any law supporting its argument that Plaintiff's breach of contract claims in Count I are preempted by 29 U.S.C. §1144(a).

One of the most analogous cases the undersigned could locate is <u>Eddlemon v. Stauffer Chemical Co.</u>, 1990 U.S. Dist. LEXIS 11563 (D. Conn. 1990) in which the district court found that a claim for breach of contract premised on moneys owed under an incentive compensation agreement was not preempted by ERISA:

> As this Court construes plaintiff's complaint, and as plaintiff has argued, plaintiff's state law claims principally seek damages for lost wages and benefits which defendant allegedly prevented him from earning by, inter alia, discharging him without cause and <u>breaching what plaintiff claims was an employment contract</u>. Plaintiff concedes that if he is found to have been terminated for cause as defendant claims, he is not entitled to recover any severance benefits or any benefits under the <u>Executive Compensation Incentive Awards program</u>. However, plaintiff claims that if he proves that he was wrongfully discharged he should be able to receive as compensatory damages those benefits which he would have received had he remained employed.
>
> <u>Recovery of lost severance benefits or plan payments resulting from a finding of a breach of an employment contract or violation of state law in this case would affect neither the administration nor the financial status of defendant's employee benefit plan.</u> The simple possibility that damages may include compensation for lost future benefits is not enough to trigger ERISA preemption of a state law cause of action. See Aetna Life Insurance Company v. Borges, 869 F.2d 142 (2d Cir.), cert. denied, 58 U.S.L.W. 3213 (1989). Were plaintiff ultimately to prevail in this action, a damage award that includes a sum for lost future benefits would require the employer to make a one time lump sum payment triggered by what had been found to be the employer's wrongful conduct. Such a damage award is, in practical terms, indistinguishable from the severance benefits at issue in Fort Halifax, which the Court held did not relate to an employee benefit plan. Further, such an award will not implicate the regulatory concerns of ERISA because it will neither regulate nor interfere with the administration of an

> employee benefit plan, nor will it create an need for an ongoing administrative program for processing claims or paying benefits. Fort Halifax, 482 U.S.at 12. <u>In order to trigger the preemptive provisions of ERISA, there must be an effect on the primary administrative functions of an employer's benefits plan</u>. Aetna Life Insurance Co. v. Borges, 869 F.2d at 146.

<u>Eddlemon v. Stauffer Chemical Co.</u>, 1990 U.S. Dist. LEXIS 11563, 11-13 (D. Conn. 1990) (underline added)

In another case involving ERISA claims as well as breach of contract claims, the Sixth Circuit found that the plaintiff's breach of contract claims were *not* preempted, notwithstanding the fact that the damages sought for the breach of contract claims in that case were measured by certain ERISA benefits:

> Because he seeks damages equaling the benefits he would have received under the plan, it seems at first glance that his claims relate to an ERISA benefit plan. However, a close reading of Marks's complaint reveals that the reference to plan benefits was only a way to articulate "specific, ascertainable damages." Wright, 262 F.3d at 615.
>
> We conclude that the district court erred in finding that Marks's state-law claims were preempted to the extent that the claims alleged would have a "tenuous, remote or peripheral" effect on the plan. Cromwell, 944 F.2d at 1276. Marks alleges that, without cause, Newcourt significantly altered his duties and reduced his compensation. <u>Because this conduct may constitute a breach of Marks's employment contract irrespective of the plan, the breach of contract claim is not preempted.</u>

<u>Marks v. Newcourt Credit Group, Inc.</u>, 342 F.3d 444, 453 (6th Cir. 2003) (underline added)

## II.   SUPPLEMENTAL JURISDICTION

As the Court noted in its recent Order (Doc. 90) Plaintiff has alleged diversity jurisdiction in his Complaint (Doc. 72, ¶3).  Carrier's arguments that the Court should decline supplemental jurisdiction are therefore moot. (Order, Doc. 90, p.2).

Even in the absence of diversity jurisdiction, Carrier's arguments fail.  Its reliance on Hudson v. Delta Air Lines, 90 F.3d 451 (11th Cir. 1996) is again misplaced because the case is factually inapposite:

> A federal court with jurisdiction over an ERISA claim does not have supplemental jurisdiction over a state law breach of contract claim <u>where there is no nexus between the contract claim and the ERISA claim</u>.

Carrier's Motion, pp. 9, 10
(underline added)

While this is a true statement, the facts in Hudson were dispositively different from the facts in the immediate case.  In Hudson the Court declined to exercise jurisdiction over the State law claim by the pilots/plaintiffs that they had been wrongfully denied certain flight privileges (breach of contract) after they were allegedly misled into retiring early to minimize their pension benefits, in violation of ERISA.  The Eleventh Circuit agreed with the defendant in that case that the "flight privileges" breach of contract claim was distinct and unrelated to the ERISA claim:

> We agree with the district court that Count V of the complaint does not arise from the same case or controversy as the ERISA causes of action. The record shows that the flight privileges at issue in Count V were not part of an ERISA benefits plan and

> were administered by a different department of Delta. Moreover, the alleged facts underlying Count V are completely unrelated to the allegations in support of the ERISA claims.

Hudson v. Delta Air Lines, 90 F.3d 451, 456 (11th Cir. 1996)

Plaintiff has no quarrel with the holding in Hudson but it has no applicability to the very different facts in this case. Plaintiff's breach of contract claims in Count I will require depositions of many of the same witnesses to be deposed in connection with his ERISA claims in Counts II and III. Because the breach of Plaintiff's incentive compensation contracts is circumstantial evidence of his Section 510 ERISA retaliation and interference claims under Counts II and III, it would be inefficient to require that he try his breach of contract claims in another forum.

Because Plaintiff is claiming that *one way* in which the Defendants violated Section 510 of ERISA was by breaching his incentive compensation agreements, the Court will have to evaluate whether those agreements were, in fact, breached in order to evaluate the Section 510 claims.[3] Accordingly, it is simply inaccurate to state that "Litigating the contract claim would unnecessarily expand the scope of this case," as Carrier claims on page 10 of its motion. In fact, even if the Court were to try only the ERISA claims in Counts II and III, it will still have to hear evidence on whether Plaintiff's incentive compensation contracts

---

[3]Other evidence of ERISA violations includes Carrier's termination of Plaintiff two years before he would have become entitled to his full pension at age 55, ten years earlier than he will now receive it; unjustifiably giving him a poor performance rating; requiring that he submit daily activity reports after 28 years of employment; and placing Plaintiff on an open-ended action plan with the constant threat of termination. Complaint, ¶29.

were, in fact, breached.

Carrier's reliance on the rationale of Frankel v. Detroit Med. Ctr., 409 F.Supp 2d 833 (D. Mich. 2005) is also misplaced. The rationale of Frankel is that this Court *should* accept jurisdiction of his breach of contract claims in Count I:

> Depending on a host of factors, then--including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims--district courts may decline to exercise jurisdiction over supplemental state law claims. The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."

Frankel v. Detroit Med. Ctr., 409 F. Supp. 2d 833, 834 (D. Mich. 2005) (underline added)[4]

Notably, the Frankel Court relied upon a decision of the Southern District of Florida in support of its rationale. As noted by Judge King of the Southern District, the court may want to decline supplemental jurisdiction over a State law claim "...that raises a novel or complex issue of State law" and "substantially predominates over the claim or claims over which the district court has original jurisdiction...." Caraballo v. South Stevedoring, 932 F. Supp. 1462, 1465 (S.D. Fla. 1996). In the immediate case, of course, there is nothing "novel or complex" about a breach of contract claim. Nor will the breach of contract claim

---

[4] The Frankel Court did not provide any details about the claims in Counts I through III alleging breach of contract and promissory estoppel, making it difficult to evaluate why it reached the decision that it should not exercise supplemental jurisdiction over those claims.

"substantially predominate" over the ERISA claims. In fact, the Court will have to determine whether a breach of contract occurred in order to consider all of Plaintiff's circumstantial evidence supporting his ERISA claims in Counts II and III.

### III. CONCLUSION

Carrier's argument that Plaintiff's breach of contract claims in Count I are preempted is without merit. Its argument that Plaintiff's breach of contract claims do not arise out of a common nucleus of operative fact with the ERISA claims is without merit. Its argument that trying the breach of contract claims in federal court will "unnecessarily expand the scope of this case" is without merit.

**WHEREFORE**, Plaintiff prays that Carrier's Motion to Dismiss (Doc. 84) be denied in its entirety.

Respectfully submitted this 29th day of February 2008,

FORTUNE LAW OFFICES

*s/Scott Thomas Fortune*
SCOTT THOMAS FORTUNE
Florida Bar No.: 342815
E-Mail: SFortune@FortuneLegal.com
1807 North Third Street
Jacksonville Beach, Florida 32250
(904) 246-2125 Telephone
(904) 246-1551 Facsimile
Trial Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: G. Joseph Curley, Esq., and Stephanie Moot, Esquire, Gunster, Yoakley & Stewart, P.A, Phillips Point East Tower,777 South Flagler Drive, Suite 500,West Palm Beach, Florida 33401 on the 29th day of February, 2008.

          FORTUNE LAW OFFICES

          *s/Scott Thomas Fortune*
          SCOTT THOMAS FORTUNE
          Florida Bar No.:  342815
          E-Mail: SFortune@FortuneLegal.com
          1807 North Third Street
          Jacksonville Beach, Florida 32250
          (904) 246-2125 Telephone
          (904) 246-1551 Facsimile
          Trial Counsel for Plaintiff