```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  JACKSONVILLE DIVISION
```

RICHARD EUGENE SEARS

    Plaintiff,

v.                        Case No.: 3:07-cv-5-HLA-JRK

CARRIER CORPORATION and
UNITED TECHNOLOGIES CORP

    Defendants.
_____\

## PLAINTIFF RICHARD SEARS' EMERGENCY
## MOTION FOR LEAVE TO TAKE MORE THAN TEN DEPOSITIONS

Plaintiff Richard Sears ("Sears"), by and through his undersigned attorneys and pursuant to Rule 30(a)(2), Federal Rules of Civil Procedure, moves this Court for an expedited order granting him leave to take more than ten depositions prior to the impending discovery cutoff on July 31, 2008.

### BACKGROUND

The present action is an employment discrimination case in which Plaintiff alleges that Defendants interfered with his incentive compensation payments and terminated him in order to interfere with his ERISA benefits and in retaliation for Plaintiff's complaints about such interference. In their Supplemental Disclosures of Witnesses ("Witness Disclosure")

(attached hereto as Exhibit "1"), Defendants identified at least 24 individuals with discoverable information or knowledge who might be called as defense witnesses at trial. At this time, Plaintiff has taken 7 depositions.

On June 11, 2008, Plaintiff asked Defendants for dates to take 9 additional depositions, 6 more than Plaintiff is presumptively allowed.  Of the 6 additional witnesses Plaintiff seeks to depose, 4 of them, including a corporate representative(s) pursuant to Rule 30(b)(6), were listed on Defendants' Witness Disclosure as people with relevant knowledge about the issues in this case.  The other two people, Mike O'Connor and Gregory Deardorff, are necessary depositions as Defendants rest their legitimate non-discriminatory reasons for Plaintiff's termination, in part, on these people. Specifically, Defendants have alleged that one of the two, Mike O'Connor, complained about Plaintiff's performance shortly before Plaintiff was terminated. Similarly, Defendants have alleged that Mr. Deardorff, a non-participant in the UTC-funded retirement plan[1], was a peer of Plaintiff's who was retained instead of Plaintiff and has

---

[1] UTC stopped offering the plan to employees hired after June 30, 2002 and Mr. Deardorff was hired on January 16, 2005. (Doc. No. 103 at fn.6.)

taken over some of Plaintiff's job responsibilities. Despite the fact that the additional witnesses whom Plaintiff seeks to depose are either listed as potential trial witnesses or are otherwise relevant due to Defendants' asserted legitimate non-discriminatory reasons for Plaintiff's termination, and despite the fact that the parties agreed to "make a good faith effort to reach agreement if there appears to be a reasonable basis" for the taking of additional depositions (See Doc. No. 18 at 5, filed April 5, 2007), Defendants have objected to Plaintiff exceeding ten depositions.

Plaintiff has made numerous attempts to resolve this matter without resorting to filing the present Motion:

- On June 16, 2008, Plaintiff responded by email to Defendants' objection to Plaintiff taking additional depositions and explained that all of the witnesses Plaintiff sought to depose were either on Defendants' list of potential witnesses or were necessary depositions based on assertions made by Defendants. (See Plaintiff's email attached hereto as Exhibit "2.") Plaintiff, with citation to case law, explained that he should not be required to guess as to which 10 of the 24

3

    potential witnesses disclosed by Defendants were the most critical to depose and reminded Defendants that the parties had agreed to consider allowing each other additional depositions if there was a reasonable basis for such. Plaintiff asked Defendants to reconsider their objection.

- On June 16, 2008, Defendants responded and maintained their objection to more than ten depositions. Defendants asked Plaintiff to eliminate some of his proposed depositions. (See Defendants' email, attached hereto as Exhibit "3.")

- Plaintiff responded to Defendants by email on June 16, 2008 and asked Defendants for dates for his 8th, 9th, and 10th depositions, Ivelis Alday, Jesse Barrack, and Patty McLaughlin respectively. In response to Defendants' request that Plaintiff limit the 6 additional depositions sought, Plaintiff asked Defendants to stipulate which individuals from the Witness Disclosure would <u>not</u> be called at trial. Plaintiff advised that he would try to narrow down his list of proposed depositions if he had a better idea of which

4

people from Defendants' list of 24 people would <u>not</u> be called at trial to surprise him. (See Plaintiff's email, attached hereto as Exhibit "4.")

- On June 18, 2008, Plaintiff again emailed Defendants to ask if they could stipulate as to which individuals from Defendants' Witness Disclosure would <u>not</u> be called as witnesses at trial. (See Plaintiff's email, attached hereto as Exhibit "5.")

- On June 20, 2008, Plaintiff emailed Defendants and attached a proposed Rule 30(b)(6) deposition notice for the taking of a corporate representative deposition. Plaintiff advised that if Defendants maintained their objection to the number of depositions, then Plaintiff would take the corporate representative deposition as his 10th deposition and delay the deposition of Patty McLaughlin until after the Court's resolution of this motion. (See Plaintiff's email, attached as Exhibit "6.") Later, on June 23, 2008, Plaintiff forward to Defendants his final Rule 30(b)(6)

5

deposition notice. (See deposition notice, attached hereto as Exhibit "7.")

- Defendants sent an email on June 20, 2008 and informed Plaintiffs that they would not call Gregory Deardorff or Mike O'Connor at trial, the only two witnesses who Plaintiff sought to depose who were not included on Defendants' list of potential witnesses. (See Defendants' email, attached hereto as Exhibit "8.")

- On June 23, 2008, Defendants informed Plaintiff by email that Defendants would likely oppose Plaintiff's proposed Rule 30(b)(6) deposition and advised Plaintiff to go ahead and set Patty McLaughlin as Plaintiff's 10th deposition. (See Defendants' email, attached hereto as Exhibit "9.")

- On June 24, 2008, Plaintiff emailed Defendants to confirm that Defendants would not narrow their list of potential witnesses and stipulate <u>not</u> to call some of the 24 listed individuals. (See Plaintiff's email, attached hereto as Exhibit "10.")

6

- Defendants responded on June 24, 2008 to confirm that they would not narrow their list of potential witnesses. (See Defendants' email, attached hereto as Exhibit "11.")

Because Defendants will not agree to allow Plaintiff to take these additional depositions, Plaintiff has no choice but to file this expedited motion seeking leave to take six additional depositions prior to the close of discovery on July 31, 2008.

## DISCUSSION

Leave to take additional depositions should be granted when consistent with the principles governing limitations on discovery in general. Fed. R. Civ. P. 26(b)(2).  In particular, the additional depositions should not seek discovery that is duplicative or cumulative, obtainable from other sources, or unduly burdensome such that the burden or expense of the discovery sought outweighs the likely benefit. Fed. R. Civ. P. 26(b)(2)(c); see also Baker County Medical Serv., Inc. v. Summit Smith, LLC, 2007 WL 114000 (M.D. Fla. January 10, 2007).

All 6 of the additional witnesses that Plaintiff seeks to depose have unique knowledge that is relevant and important to Plaintiff's case.  Most significantly, 4 of the 6 witnesses, Chuck Sheets, Bill Albert, Jeff Hoffman, and a Rule 30(b)(6) corporate representative, have been identified by Defendants in their Witness Disclosure as people with knowledge relevant to this dispute and people who may be called as witnesses at trial.  In fact, Defendants identified at least 24 people as potential witnesses.  Yet, Defendants have declined to inform Plaintiff whether or not they will call any of the 24 potential witnesses at trial, including the 4 that Plaintiff seeks leave to depose.  Plaintiff should not be expected to guess as to which 10 out of the 24 potential witnesses are the most important.  Simply put, Defendants cannot identify 24 potential witnesses, decline to stipulate that any of them will not be called at trial, and then block Plaintiff's efforts to seek discovery from them.  See Price v. Gwinnett Family Dental Care, LLC, 2007 WL 3477771, *4 (N.D. Ga. Oct. 31, 2007) (granting Plaintiff leave to take additional depositions because "[t]o the extent the individuals Plaintiff seeks to depose remain potential witnesses for the defense, the Court finds that Plaintiff is entitled to inquire into

their knowledge of the relevant facts to avoid surprise at trial.")

The specific ways in which the additional depositions sought comport with federal discovery rules are described below:

### Chuck Sheets

Mr. Sheets is a Carrier distributor. Mr. Sheets told Plaintiff that Mr. Sheets had been informed that Plaintiff was fired and that Kelly Cutchins, director of Carrier in Florida, told Mr. Sheets that the decision to terminate Plaintiff was made "above" Mr. Cutchins' level. This statement indicates that the decision to terminate Plaintiff was made either at the corporate Carrier or UTC level and, if true, would strongly support Plaintiff's claims against Carrier and UTC for interference with ERISA benefits and retaliation. Moreover, Mr. Sheets' testimony would contradict Kelly Cutchins' testimony that Mr. Cutchins was involved in the decision that ultimately led to Plaintiff's termination and would support Plaintiff's contention that Defendants' asserted legitimate non-discriminatory reason for Plaintiff's termination is pretextual. Because the issues of who selected

Plaintiff for termination and why he was selected remain disputed and unresolved, a deposition of Mr. Sheets is necessary.

It is important to note that Plaintiff has diligently pursued this discovery. Plaintiff has deposed Plaintiff's former first-level boss, James Bradshaw, and his second-level supervisor, Kelly Cutchins. Plaintiff also deposed senior Carrier human resources employees to find out who at Carrier or UTC decided to fire Plaintiff, however, both Sandy Porzucek and Nicole Mehlek testified that they did not select Plaintiff for termination. Therefore, a deposition of Mr. Sheets would not be duplicative and the information sought from him cannot be obtained elsewhere. As the issues of who selected Plaintiff for termination and why he was selected are significant and unresolved, Mr. Sheets has indicated that he has knowledge on the subject, and he is listed by Defendants as a potential witness, his deposition should be authorized.

### Bill Albert

Bill Albert was Plaintiff's first-level boss when Plaintiff first came to work for Carrier in Florida in 2001. Mr. Albert has knowledge, therefore, about the scope of

10

Plaintiff's job duties. This knowledge is significant because Defendants have alleged that Plaintiff's incentive compensation payments were reduced because he was only covering half of the state as his territory. No one that Plaintiff has deposed yet, including Plaintiff's former boss, James Bradshaw, could testify as to the scope of Plaintiff's job duties or the territory that he was covering at the time his incentive compensation payments were cut in half. Therefore, Mr. Albert's testimony is vital to Plaintiff's claim that Defendants' asserted legitimate non-discriminatory reason for reducing his incentive compensation payments and interfering with his ERISA benefits is pretext for discrimination. Mr. Albert's testimony would not be cumulative and Plaintiff cannot get the information from any other source. As this issue is significant, unresolved, Mr. Albert has indicated that he has knowledge on the subject, and he is listed by Defendants as a potential witness, his deposition should be authorized.

### Jeff Hoffman

Jeff Hoffman was a peer of Plaintiff's. Defendants have asserted that Mr. Hoffman and Plaintiff performed the same job duties in Florida and that is the reason Plaintiff's

11

incentive compensation payments were suddenly cut in half in the second quarter of 2002. Plaintiff has learned, however, that Mr. Hoffman was not hired until after Plaintiff's incentive compensation payments had originally been cut and did not begin performing the same functions as Plaintiff until 2003. A deposition of Mr. Hoffman is necessary, therefore, in order to clarify exactly what job functions he was performing, when he was performing those functions, and the details about his incentive compensation payments. Plaintiff needs such testimony to verify and/or rebut Defendants' asserted explanation for the interference with Plaintiff's incentive compensation payments and, consequently, ERISA benefits. Although Plaintiff has sought this information through written requests for production, Defendants have objected to producing such information. (See Plaintiff's Motion to Compel, Doc. No. 103 at 22). Therefore, at this point, such information is not obtainable from any other source and is not cumulative of discovery Plaintiff has already obtained. As interference with Plaintiff's incentive compensation payments is a significant and unresolved issue in this case, Mr. Hoffman has relevant knowledge on the subject, and he is listed by Defendants as a potential witness, his deposition should be authorized.

### Rule 30(b)(6) Corporate
### Representative of Carrier and/or UTC

Plaintiff seeks to depose a corporate representative of Carrier and/or UTC with knowledge regarding the purpose of the 2006 Reduction In Force ("RIF") by which Plaintiff was terminated and other similar RIF's throughout UTC's various business segments.  Plaintiff would also seek through this deposition statistical information regarding the employees that were terminated in connection with those RIF's, in particular, whether those employees were participants in the UTC-funded Employee Retirement Plan.  As explained in detail in Plaintiff's Motion to Compel (Doc. No. 103), which is pending before the Court, a plaintiff in a circumstantial evidence case may prove discriminatory intent and rebut the employer's asserted legitimate non-discriminatory reason for the adverse employment action through circumstantial evidence and/or statistical data, often throughout various business segments or divisions.  See e.g., McDonnell Douglas Corporation v. Green, 411 U.S. 792, 805 (1973) (employer's company-wide policy or practice relevant to whether alleged discrimination conformed to practice); Sweat v. Miller Brewing Co., 708 F.2d 655, 658 (11th Cir. 1983) (information regarding an employer's general policy throughout various departments

13

relevant to rebutting pretext in individual case); <u>Burns v. Thiokol Chemical Corp.</u>, 483 F.2d 300, 306 (8th Cir. 1973) ("Even though a suit seeks only individual relief for an individual instance of discrimination, and is not a pattern or practice suit . . . or a class action, the past history of [all employees throughout the company] is surely relevant").

Plaintiff has attempted to get such statistical information regarding the RIF from other sources. Plaintiff has propounded discovery targeted at this issue, but Defendants have objected to producing any information. As stated above, a motion to compel the production of such information is currently pending before the Court. Plaintiff also deposed Sandy Porzucek, Senior HR Manager for Carrier, and inquired as to the number of employees throughout UTC's business segments that were terminated as part of the 2006 RIF and whether those employees were participants in the UTC-funded Employee Retirement Plan. While she testified that such information could be easily obtained through a computer inquiry (See Doc. No. 103 at 14), Ms. Porzucek testified that she did not know the answer to those questions. Further, Plaintiff has requested that a corporate representative be his 10th deposition. (See Exhibit 6). Defendants advised

Plaintiff that they would likely object to Plaintiff's notice of deposition (see Exhibit 9), and would not produce the deponent(s). Therefore, Plaintiff has no other way to obtain such relevant information other than asking the Court for permission to conduct a Rule 30(b)(6) deposition of a UTC and/or Carrier corporate representative with relevant knowledge. And, as with the above 3 witnesses, Defendants identified a corporate designee as a potential witness in their Witness Disclosure.

### Mike O'Connor

Mike O'Connor is a former Carrier employee. As part of their asserted legitimate non-discriminatory reason for Plaintiff's termination, Defendants contend that Plaintiff's performance was substandard. Plaintiff's former boss, James Bradshaw, testified that Mr. O'Connor complained about Plaintiff's performance. Mr. O'Connor has told Plaintiff that he never said anything negative about Plaintiff's work performance. Therefore, Mr. O'Connor's testimony is important and relevant in order for Plaintiff to rebut Defendants' asserted explanation for Plaintiff's termination and demonstrate pretext. Moreover, Mr. O'Connor is the only person that can answer questions about whether he complained

about Plaintiff's performance and his testimony would not be duplicative or cumulative of other testimony given or sought in this case.

### Gregory Deardorff

Gregory Deardorff is a current Carrier employee who was a peer of Plaintiff's and was retained instead of Plaintiff in the 2006 RIF. Defendants contend that Mr. Deardorff was retained instead of Plaintiff with the idea that Mr. Deardorff would cover both his own territory in Orlando and Plaintiff's territory in Jacksonville. Plaintiff contends that Defendants' explanation does not make sense because Plaintiff had already been covering both markets, Mr. Deardorff was a new employee at the time of Plaintiff's termination, and had no knowledge of the Jacksonville market in order to take it over. Moreover, the evidence suggests that Mr. Deardorff was not a participant in the UTC-funded Employee Retirement Plan, thereby buttressing Plaintiff's claim that his status as a plan participant was a factor in his selection for termination. Therefore, a deposition of Mr. Deardorff in order to question him about his experience with Defendants at the time of Plaintiff's termination, his knowledge of the Jacksonville market at the time of Plaintiff's termination,

16

the job functions he has taken over since Plaintiff's termination, and his participation or lack thereof in the UTC-funded Employee Retirement Plan, among other issues, is necessary to verify and rebut Defendants' asserted legitimate non-discriminatory reason for Plaintiff's termination. Mr. Deardorff's testimony would, furthermore, not be duplicative of any testimony Plaintiff has obtained or is seeking.

It is important to note that Plaintiff is not seeking to depose all 24 individuals that Defendants have identified as potential witnesses on their Witness Disclosure. Instead, Plaintiff is seeking to depose those people with unique knowledge relevant to Plaintiff's substantive claims and to rebutting Defendants' asserted legitimate non-discriminatory reasons. Moreover, there is no excessive burden associated with the taking of these 6 depositions. Five of the 6 witnesses reside in Florida, and thus, the travel cost will not be great. Moreover, several of the witnesses live near one another such that more than one deposition could be completed in a single day. The burden of taking the 6 additional depositions is surely less than the significant benefit of this discovery.

Lastly, Plaintiff respectfully seeks an expedited ruling on this Motion. Discovery closes in this case in just over one month, on July 31, 2008. If the parties followed the routine briefing schedule, once the Court entered its order, there would not likely be sufficient time to complete the remaining depositions if Plaintiff were, in fact, successful. Moreover, two continuances have already been granted in this case and Plaintiff understands that another continuance will not be freely granted. Therefore, in order to ensure that Plaintiff has sufficient time to pursue relevant and necessary discovery into witnesses that will likely be defense witnesses at trial, Plaintiff respectfully requests that this Court treat this motion as an emergency motion and require an expedited briefing schedule accordingly.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order granting Plaintiff leave to take the depositions of Chuck Sheets, Bill Albert, Jeff Hoffman, Mike O'Connor, Greg Deardorff, and a Rule 30(b)(6) corporate representative(s) to be designated by Defendants.

**RULE 3.01(G) CERTIFICATION**

Pursuant to Local Rule 3.01(g), United States District Court, Middle District of Florida, the undersigned counsel have conferred with counsel for Defendants in an effort to resolve this dispute and Plaintiff is authorized to represent to the Court that Defendants **DO NOT** consent to the relief sought in this Motion.

Respectfully submitted,

        BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
          Professional Association

        By: s/Amanda Eaton Ferrelle
          John A. DeVault, III
          Florida Bar No. 103979
          Amanda Eaton Ferrelle
          Florida Bar No. 0913251
          The Bedell Building
          101 East Adams Street
          Jacksonville, Florida  32202
          Telephone:  (904) 353-0211
          Facsimile:  (904) 353-9307

        and

        FORTUNE LAW OFFICES, P.A.
          Scott T. Fortune
          Florida Bar No. 342815
          1807 Third Street North
          Jacksonville Beach, FL 32250
          Telephone: (904) 246-2125
          Facsimile: (904) 246-1551

        Attorneys Richard Eugene Sears

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this  27th  day of June, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    G. Joseph Curley
    Stephanie Moot
    Gunster, Yoakley & Stewart, P.A.
    Phillips Point, Suite 500 East
    777 South Flagler Drive
    West Palm Beach, Florida 33401


                        s/Amanda Eaton Ferrelle
                        Amanda Eaton Ferrelle
                        Florida Bar No. 0913251
                        E-Mail: aferrelle@bedellfirm.com
                        The Bedell Building
                        101 East Adams Street
                        Jacksonville, Florida 32202
                        Telephone:  (904) 353-0211
                        Facsimile:  (904) 353-9307