UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

**RICHARD EUGENE SEARS**                    CASE NO.  3:07-CV-5-HLA-JRK

    **Plaintiff,**

v.

**CARRIER CORPORATION and
UNITED TECHNOLOGIES CORP**

    **Defendants.**
_____/

## DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S STATISTICS EXPERT

Defendant Carrier Corporation ("Carrier") files this Motion to Strike Plaintiff's Statistics Expert pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.

1.  Plaintiff served a Supplemental Expert Report (the "Expert Statistical Analysis") on October 22, 2008, and filed it as an exhibit to his Opposition to Carrier's Motion for Summary Judgment [DE #197] on November 6, 2008.[1]  The Expert Statistical Analysis violates the Court's September 10, 2008 Order [DE# 149] denying Plaintiff leave to obtain a statistics expert.

2.  In the Expert Statistical Analysis, served over eight months after the expert disclosure deadline, and after the close of discovery, Plaintiff, for the first time, submits a complex statistical analysis by an alleged statistics expert.  This late disclosure of a statistics expert was made over one month after Magistrate Judge Klindt *denied* Plaintiff's request for a statistics expert.

3.  The Expert Statistical Analysis should be stricken because Magistrate Judge Klindt has already denied Plaintiff's request to obtain a statistics expert.  Plaintiff's disclosure of

---

[1]  A copy of the Expert Statistical Analysis is attached hereto as Exhibit "A."

a statistics expert is late and would unfairly prejudice Carrier.  In addition, the alleged expert is not a qualified expert in the field of statistics.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

### I.   The Court Has Already Denied Plaintiff's Motion to Obtain a Statistics Expert.

Plaintiff's submission of expert statistical evidence violates the Court's September 10, 2008 Order [DE #149] denying Plaintiff leave to obtain a statistics expert.  The parties' expert witness disclosure deadline in this case was February 4, 2008 and discovery cutoff was July 31, 2008. *See* August 27, 2007 Order [DE# 46] and February 26, 2008 Order [DE# 91].  Plaintiff failed to disclose an expert statistician by either deadline.  On August 8, 2008, Plaintiff filed his Emergency Motion to Compel Answers to Interrogatories and Seeking Additional Relief [DE# 129], essentially seeking to reopen discovery to compel Carrier to supplement its answer to an interrogatory (no. 19) seeking plan status and point information for a group of Carrier employees.  In the Motion to Compel, Plaintiff also sought leave to obtain an expert statistician for the purpose of evaluating the information provided in response to the interrogatory. *See* Motion to Compel at 3.

Magistrate Judge Klindt agreed to reopen discovery, but only "for the limited purpose of allowing Plaintiff to propound Interrogatory No. 19 in a fashion that is clear and unambiguous as to the information sought."[2] *See* Order [DE# 149] at 7.  However, the Court **denied** Plaintiff's request for leave to obtain an expert statistician to interpret the statistical data derived from Interrogatory No. 19. *Id.* at 6, 9-10.  Magistrate Judge Klindt ruled that the Court "declines to allow Plaintiff leave to obtain an expert statistician after the close of discovery . . . . Plaintiff served Defendant with Interrogatory 19 in December of 2007. Plaintiff should have anticipated the need, if any, for a statistical expert to interpret Defendant's responses to Interrogatory No. 19

---

[2]   Plaintiff conceded that his Interrogatory 19 "was not the model of clarity." *See* Order at 4.

long before this dispute arose." *Id.* at 10. The Court stated that the Plaintiff "cannot rely on the parties' instant dispute [raised by the Motion to Compel] as his justification for not obtaining an expert statistician in a timely manner." *Id.*

The Court has already denied Plaintiff leave to obtain an expert on statistics. The Expert Statistical Analysis should be stricken as it is in blatant violation of a prior Court order.

**II.     Plaintiff Did Not Timely List Perry as a Statistics Expert and the Late Disclosure Would Unfairly Prejudice Carrier.**

    **A.     Plaintiff Failed to Timely List Perry as a Statistics Expert.**

Even had this Court not already denied Plaintiff leave to obtain expert statistical testimony, Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure requires the parties to make expert disclosures at the times and in the sequence that the court orders. Furthermore, Rule 26(a)(2)(B) requires the disclosure to be accompanied by a written report prepared and signed by the expert and containing, among other things, a complete statement of all opinions the witness will express. A party who fails to timely identify an expert or fails to timely provide information as required by Rule 26(a)(2)(B) is prohibited from using that witness or information to supply evidence unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

The parties' expert witness disclosure deadline in this case was February 4, 2008. *See* August Order [DE #46]. Plaintiff failed to disclose an expert statistician by the deadline, which expired over nine months ago and did not even disclose an expert statistician by the discovery cutoff of July 31, 2008. Therefore, the Expert Statistical Analysis and Plaintiff's designation of Perry as an expert statistician should be stricken. *See* Fed. R. Civ. P. 37(c)(1); *Bevolo v. Carter*, 447 F.3d 979 (7th Cir. 2006)(plaintiff's expert's affidavit was properly stricken where the expert was not disclosed until some 10 months after the appropriate deadline, and over a month after the close of discovery).

3

Here, Plaintiff disclosed Dr. Joseph Perry as an expert in economics who was to opine on damages, in June 2006.  For two years, Perry had only been disclosed as an economics expert opining on damages, never as an expert statistician opining on statistical probabilities.  Perry issued a report on June 22, 2006 containing his "computations concerning the economic losses of Mr. Richard E. Sears."[3]  Perry's fifteen page report sets forth underlying data and the assumptions and computations made by Perry with respect to the following: the Plaintiff's base salary and incentive compensation loss through May 31, 2006; the Plaintiff's future earnings and fringe benefit loss from May 31, 2006 to age 55; the Plaintiff's loss of past and future 401(k) matching contributions and stock options from Carrier; and the Plaintiff's loss of retirement income.  The report contains no statistical analysis nor any opinion on probabilities.

Carrier took Perry's deposition on July 16, 2008.  Prior to Perry's deposition, Plaintiff's counsel stated that he needed discovery from Carrier relating to compensation, so that Perry could complete his damages analysis.  Plaintiff's counsel insisted that certain "economic data" which had been requested by Plaintiff in discovery be produced to Plaintiff 20 days prior to the deposition so that Perry "can prepare a complete damages model."[4]  The data Plaintiff requested related to compensation.  Carrier provided the information requested.  Plaintiff never requested a response to Interrogatory No. 19 or any other statistical information and never stated a response was necessary for Perry's analysis.  In his deposition, Perry testified that he was asked to "look at the situation – economic situation of Mr. Richard Sears and to compute his economic losses," and that his opinions were limited to economic loss projections of the Plaintiff's damages. (Perry

---

[3] A copy of the June 22, 2006 report is attached hereto as Exhibit "B."  He supplemented the economic loss report on July 14, 2008, and it contains "revised computations concerning the economic losses of Mr. Richard E. Sears . . . ."  A copy of the July 14, 2008 report is attached as Exhibit "C."

[4] Emails dated April 14, 2008 and May 15, 2008 are attached hereto as Composite Exhibit "D."

Deposition, 123/4-10; 125/7-10).  The relevant excerpts of Perry's deposition transcript are attached as Exhibit "E."

Now, in October 2008, after the close of discovery and after Perry's deposition, Plaintiff seeks to use Perry as a statistics expert to advance complex statistical theories and formulas, and opine on statistical probabilities.  In the Expert Statistical Analysis, Perry considers "the probability, based upon random occurrence, that, from a group of 44 persons, there would be 9 persons with the same pension plan, and that 3 of them would have more than 90 but less than 100 points under the Rule of 100."  The Expert Statistical Analysis states that "[t]he proper analysis of this problem requires the use of the hypergeometric distribution, which is based upon sampling without replacement from a dichotomous population…."  It also states "[a]n alternate approach to analyzing this problem would involve the use of a normal distribution approximation. . . .  Note that the approximation does not give the same values as the hypergeometric distribution itself."  It uses complex formulas such as:

$$f(k; N, m, n) = \frac{\binom{m}{k}\binom{N-m}{n-k}}{\binom{N}{n}}$$

Prior to October 2008 Plaintiff never disclosed that he would be offering expert statistical evidence (and only first indicated a desire to do so in August 2008 when he requested leave, which the Court denied).  Plaintiff's disclosure of Perry as an expert statistician, and the filing of the Expert Statistical Analysis, in October 2008, is untimely and should be stricken.

      **B.**    **Plaintiff's Late Disclosure of an Expert Statistician Unfairly Prejudices Carrier.**

Plaintiff's late and wholly unexpected disclosure of an expert statistician unfairly prejudices Carrier.  First, the expert statistical opinions were not provided to Carrier until after

Carrier filed its Motion for Summary Judgment.  Carrier was therefore not able to address the Expert Statistical Analysis in its Motion for Summary Judgment, but Plaintiff relied upon the statistical analysis in his Opposition to Carrier's Motion.  Second, until October 22, 2008, Perry was held out by Plaintiff as an economics expert whose opinions were limited to calculating Plaintiff's alleged damages.  Indeed, even in Plaintiff's Opposition to Carrier's Motion for Summary Judgment, Plaintiff refers to Perry as his "forensic economist." *See* DE# 197 at 4.  All reports issued by Perry prior to the expert witness and discovery deadlines are limited to damages calculations, and Perry testified that his opinions were limited to economic loss projections. (Perry Deposition, 125/7-10).  Plaintiff did not request leave to obtain a statistician until the dispute regarding the interpretation of Interrogatory No. 19 arose, and the Magistrate Judge denied the Plaintiff's request. *See* Order [DE # 149] at 10.  As a result, Carrier could not have anticipated that Plaintiff would violate the Court's Order by disclosing a statistics expert in October 2008.  Had Plaintiff timely disclosed that he was to have a statistics expert, or had the Court granted Plaintiff's motion to obtain one, Carrier would have obtained a rebuttal expert statistician.[5]

### III. Perry Should Be Stricken as a Statistics Expert Because He is Not a Qualified Expert in the Field of Statistics.

Even had the Court not already denied Plaintiff's request to obtain an expert statistician, and even were the disclosure not untimely, Perry should be stricken because he is not qualified as an expert statistician.  To be qualified as an expert, a witness needs scientific, technical, or other specialized knowledge in a particular field. FRE 702.  Perry is not qualified in the field of

---

[5] As explained above, the Expert Statistical Analysis utilizes complicated statistics principles, the use and results of which require an expert statistician to rebut.  Because Plaintiff did not disclose an expert statistician by the relevant deadline (indeed, not until after discovery cutoff) and because this Court already denied Plaintiff's request for leave to obtain an expert statistician after the relevant deadline, Carrier never anticipated the need to obtain a rebuttal expert statistician.  Without its own expert statistician to rebut Perry's opinions, Carrier would be unfairly prejudiced.

statistics because he lacks sufficient education and training. Perry is an economist who holds an M.A., M.B.A. and Ph.D. in Economics, and holds a specialization in Economics and Business Statistics Forecasting. (Perry Deposition, 37/10-13). Perry admits that he is not a professional statistician. (Perry Deposition, 28/17-18). Perry claims only that, as an economist, he has been trained in statistics. Id. However, this kind of ancillary training is not sufficient to qualify him as an expert statistician. *See Reid v. Albermarle Corp.*, 207 F.Supp.2d 499 (M.D. La. 2001)(witness with a B.A. in Mathematics and Economics, "a minor in Statistics," and a Ph.D. in Sociology lacked sufficient academic credentials to qualify him to express expert opinions on statistical analysis on whether age was factor in reduction in force); *King v. Enterprise Rent-A-Car Co.*, 231 F.R.D. 255 (E.D. Mich. 2004)(employee's expert who had no educational or professional background or experience in employment statistics was not qualified to give his opinion on statistical evidence that purported to show disparity in promotions of African-Americans who held management position). Accordingly, Perry is not qualified and should be stricken as a statistics expert.

**IV.    Conclusion**

This Court has already ruled that Plaintiff cannot obtain an expert statistician because discovery has closed and Plaintiff "should have anticipated the need, if any, for a statistical expert to interpret Defendant's responses to Interrogatory No. 19 [plan status, points and termination information for Carrier employees] long before this dispute arose." Plaintiff's introduction of complex statistical expert testimony by his labor economist violates the Court's Order, is late and would unfairly prejudice Carrier.

As a result, Joseph Perry should be stricken as an expert statistician, the Expert Statistical Analysis (Exhibit 36 to Plaintiff's Opposition [DE# 197]) should be stricken, and all references and argument in Plaintiff's Opposition to Carrier's Motion for Summary Judgment [DE# 197]

relating to the Expert Statistical Analysis should be stricken.  In the alternative, if the Court allows Plaintiff's untimely expert disclosure, despite the Court's Order denying Plaintiff's request, Carrier requests leave to obtain an expert statistician to rebut Plaintiff's Expert Statistical Analysis, to propound written discovery to Perry on his statistical opinions, to depose Perry on his statistical opinions, and to file a reply to Plaintiff's Opposition with respect to the newly (and untimely) advanced expert statistical analysis which was not provided to Carrier until after Carrier filed its Motion for Summary Judgment.  Carrier requests leave to file a reply no earlier than 30 days after Carrier has obtained its own expert and deposed Perry.  Because the failure to strike the Expert Statistical Analysis would force discovery to be reopened at this late date, Carrier also requests leave to amend its witness and exhibit list, based upon the information deemed necessary by Carrier's expert statistician, and requests a continuance of the trial term, currently set to begin on March 2, 2009, and any other relief necessary and appropriate given the circumstances.

Respectfully submitted,

s/ Rebecca Cavendish
G. Joseph Curley
(Bar No. 571873)
jcurley@gunster.com
Rebecca C. Cavendish
(Bar No. 0152153)
rcavendish@gunster.com
Attorneys for Defendants
Gunster, Yoakley & Stewart, P.A.
Phillips Point - Suite 500 East
777 South Flagler Drive
West Palm Beach, Florida  33401-6194
Telephone:     (561) 655-1980
Facsimile:     (561) 655-5677

## **CERTIFICATE OF COMPLIANCE WITH RULE 3.01 (g)**

The undersigned has conferred with Plaintiff's counsel regarding this Motion.  Plaintiff's counsel opposes the Motion.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

>
> s/ Rebecca Cavendish
> ――――――――――――――
> G. Joseph Curley
> (Bar No. 571873)
> jcurley@gunster.com
> Rebecca C. Cavendish
> (Bar No. 0152153)
> rcavendish@gunster.com
> Attorneys for Defendants
> Gunster, Yoakley & Stewart, P.A.
> Phillips Point - Suite 500 East
> 777 South Flagler Drive
> West Palm Beach, Florida  33401-6194
> Telephone:     (561) 655-1980
> Facsimile:      (561) 655-5677

CASE NO. 3:07-CV-5-HLA-JRK

# SERVICE LIST
*Richard Eugene Sears v. Carrier Corporation and United Technologies Corp.*
**Case No.: 3:07-CV-5-HLA-JRK**
**United States District Court, Middle District of Florida**

Scott Thomas Fortune, Esq.
SFortune@FortuneLegal.com
Fortune Law Offices
1807 North Third Street
Jacksonville Beach, Florida  32250
Telephone:     (904) 246-2125
Facsimile:     (904) 246-1551
Attorneys for Plaintiff
[served via CM/ECF]

John A. DeVault, III, Esq.
jdevault@bedellfirm.com
Amanda Eaton Ferrelle, Esq.
aferrelle@bedellfirm.com
Bedell, Dittmar, DeVault, Pillans, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, Florida  32202
Telephone:     (904) 353-0211
Facsimile:     (904) 353-9307
Attorneys for Plaintiff
[served via CM/ECF]

G. Joseph Curley, Esq.
jcurley@gunster.com
Rebecca C. Cavendish, Esq.
rcavendish@gunster.com
Gunster, Yoakley & Stewart, P.A.
Phillips Point - Suite 500 East
777 South Flagler Drive
West Palm Beach, Florida  33401-6194
Telephone:     (561) 655-1980
Facsimile:     (561) 655-5677
Attorneys for Defendants
[served via CM/ECF]

WPB 1011182.2