UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD EUGENE SEARS

    Plaintiff,

v.                  Case No.: 3:07-cv-5-HLA-JRK

CARRIER CORPORATION.

    Defendants.
_____\

**RICHARD EUGENE SEARS'**
**MOTION FOR FEES, EXPENSES, AND**
**PRE-JUDGMENT INTEREST AND MEMORANDUM OF LAW**

Plaintiff Richard Eugene Sears, pursuant to this Court's Order dated February 25, 2009 (Doc. No. 220) in which the Court granted Plaintiff's Motion for Entry of Final Judgment Pursuant to Offer and retained jurisdiction to determine the amount of Plaintiff's costs, reasonable attorneys' fees, and pre-judgment interest, moves the Court for entry of an Order against Defendant Carrier Corporation ("Carrier") for reimbursement to Sears of the fees and expenses he incurred in connection with his claims against Carrier and pre-judgment interest. In support of the motion, Sears would show the following:

1. Sears' Second Amended Complaint (Doc. No. 72, filed January 22, 2008) raised three causes of action against

Carrier and Carrier's parent corporation, United Technologies Corp. ("UTC"): (i) breach of incentive compensation under Florida law; (ii) interference with ERISA benefits under section 510 of ERISA; and (iii) ERISA retaliation pursuant to section 510 of ERISA.

2.     On August 5, 2008, Sears' claims against UTC were dismissed without prejudice (Doc. No. 127).  Sears elected not to amend his complaint to re-assert claims against UTC.

3.     On February 6, 2009, Carrier served on Sears an Offer of Judgment pursuant to Rule 68, Federal Rules of Civil Procedure.  In the Offer, Carrier offered to have a judgment entered against it in the amount of $170,000.00, plus pre-judgment interest, and costs and reasonable attorneys' fees incurred in connection with Sears' claims against Carrier. The Offer of Judgment excluded attorneys' fees and costs incurred in connection with Sears' claims against UTC.

4.     On February 20, 2009, Sears timely and unconditionally accepted Carrier's Offer of Judgment.

5.     On February 20, 2009, Sears filed a Motion for Entry of Judgment Pursuant to Offer, which motion was consented to by Carrier (Doc. Nos. 218 and 219).

6.   On February 25, 2009, the Court granted Sears'
motion and directed the Clerk to enter judgment in favor of
Sears and against Carrier.   (Doc. No. 220).   The Court also
retained jurisdiction "for the purpose of determining the
amount of Plaintiff's costs, reasonable attorneys' fees, and
pre-judgment interest."

Accordingly, Sears moves for entry of an order requiring
Carrier to reimburse him for the attorneys' fees and expenses
incurred litigating Sears' claims against Carrier and for pre-
judgment interest.

### Summary of Claims

7.   Carrier's Offer of Judgment provided for the award
to Sears of "pre-judgment interest, in addition to the gross
amount stated herein." (Doc. No. 218).   Computed from the date
of his termination by Carrier (May 10, 2006), to the date of
the Offer (February 6, 2009), at Florida's statutory interest
rates then in effect, the amount of pre-judgment interest
totals $48,685.42 (see Schedule of Interest, attached hereto
as Exhibit A).

8.   Carriers' Offer of Judgment further provided for the
recovery by Sears of costs and reasonable attorneys' fees

3

incurred through the date of the Offer of Judgment in connection with Sears' claims against Carrier.  In accordance with the attached expert witness Declaration of Rutledge Liles (Exhibit B), Plaintiff seeks to recover attorneys' fees, expenses, and costs as follows:

<u>Attorneys' Fees</u>

| | |
|---|---|
| Professional Services | |
|     Bedell Firm | $ 82,041.50 |
|     Fortune Law Offices | 319,418.75 |
| | |
| Out-of-Pocket Expenses Customarily Billed to a Client | |
|     Bedell Firm | 7,000.99 |
|     Fortune Law Offices | 5,241.84 |
| | |
| Total Fees and Expenses | **$ 413,703.08** |

<u>Taxable Costs</u>

| | |
|---|---|
|     Bedell Firm | 0.00 |
|     Fortune Law Offices | 27,383.66 |
| | |
| Total Taxable Costs | **$ 27,383.66** |

**Total Fees and Taxable Costs**          **$ 441,086.74**

9.    Sears' counsel, Bedell, Dittmar, DeVault, Pillans & Coxe, P.A. of Jacksonville and The Fortune Law Offices of Jacksonville Beach have rendered services and incurred expenses in their representation of Sears in this case through the date of Carrier's Offer of Judgment, February 6, 2009, as

4

more fully described in the Declarations of John DeVault and

Scott Fortune, attached hereto as Exhibits C and D.[1]

### CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 3.01(g), United States District

Court, Middle District of Florida, counsel for Plaintiff

certifies that prior to filing this Motion, he conferred with

counsel for Carrier Corporation but they have been unable to

agree to the relief requested by the Motion.

### MEMORANDUM IN SUPPORT

As the Offer of Judgment accepted by Sears provides that

he is entitled to recover attorneys' fees and costs incurred

in connection with his claims against Carrier, entitlement to

fees and costs is not an issue before the Court.[2]   Instead,

---

[1]   The Declaration of Scott Fortune shows the actual time spent by Mr. Fortune and his law clerk, at standard hourly rates, totaling $433,197, after deletion of approximately 250 hours for time pursuing UTC claims, and 160 hours based on billing judgment.   As the result of Mr. Liles' reduction of Mr. Fortune's time by 25% and his law clerk's time by 30%, the total amount sought by the Fortune Law Firm for professional services is $319,418.75.

[2]   Although Plaintiff's entitlement to attorneys' fees and costs is not disputed by the parties, it is worth noting that section 1132(g)(1) of ERISA authorizes the recovery by a prevailing plaintiff of "a reasonable attorneys' fee and costs of action."   Similarly, section 448.08, Florida Statutes,

the issue before the Court is the proper amount of fees and costs to be awarded Sears.  Both the Eleventh Circuit and the Florida Supreme Court have adopted the lodestar approach as the starting point in calculating a proper award of fees. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403, 406 (Fla. 1999) (citing Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150-51 (Fla. 1985)).   Thus, when evaluating the reasonableness of attorneys' fees to be awarded, the Court should look at the number of hours reasonably expended by counsel multiplied by the attorneys' reasonable hourly rate, i.e., the lodestar.

Significantly, in ERISA, employment discrimination, and civil rights cases, there is "no requirement that the amount of an award of attorneys' fee be proportional to the amount of the underlying award of damages." Building Serv. Local 47 v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995); see also City of Riverside v. Rivera, 477 U.S. 561, 562, 580 (1986) (rejecting notion that attorneys' fee award should be proportional to damages award, holding that the Hensley

---

authorizes the award of reasonable attorneys' fees to a prevailing plaintiff in an action for unpaid wages.

lodestar approach is used to determine attorneys' fees in civil rights cases even when a plaintiff only recovers monetary damages, and upholding attorneys' fee award under 42 U.S.C. § 1988 in amount of five times the underlying damage award); Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1493 (11th Cir. 1994) (discussing with approval City of Riverside); Operating Eng'rs Pension Trust v. B&E Backhoe, Inc., 911 F.2d 1347 (9th Cir. 1990) (holding that there is no requirement in ERISA cases that attorneys' fee award be proportional to damages award because Congress demonstrated its intent that attorneys be compensated for their time spent litigating ERISA claims).

The total number of hours spent rendering professional services for which counsel is seeking reimbursement, including paralegal/law clerk time, was not only reasonable, but was essential. The amount of time (379 hours) "expended by Mr. DeVault and his law firm is more than reasonable." See Exhibit B, Liles Declaration. Moreover, and significantly, while the Fortune Law Offices spent substantially more time working on the case than it is seeking in this request, Mr. Fortune is seeking only the amount of fees that Mr. Liles has opined is reasonable. This figure represents a 25% reduction

of Mr. Fortune's time and a 30% reduction of the time of Mr. Fortune's law clerk. This reduction, as explained in detail below, comes after Mr. Fortune already deleted over 400 hours of time in light of redundancies and time spent litigating issues related exclusively to UTC. Therefore, the number of hours for which Sears' counsel seeks reimbursement is imminently reasonable and is much less than the amount of time actually spent working on the case.

This case was time intensive. The issues presented in this action – whether Carrier breached one or more incentive compensation contracts it had with Sears, whether these breaches interfered with Sears' ERISA benefits pursuant to an extremely complicated pension plan, and whether Sears' incentive compensation was reduced and/or he was terminated in retaliation for complaints he made – were factually and legally complex issues and would have been difficult to prove at trial. ERISA cases in general and this case in particular required the expenditure of considerable time by counsel to research the legal issues, learn the factual circumstances, and effectively advocate Sears' position. Significant time was also spent in connection with the thirteen depositions

Sears took and the five depositions Sears defended in this matter throughout the country.

Further, counsel had to spend extraordinary amounts of time drafting discovery requests and obtaining and reviewing discovery produced by Carrier.   Indeed, Carrier ultimately produced more than 13,500 pages of documents.   Sears' counsel also spent a great deal of time responding to Carrier's four sets of discovery requests, and briefing and responding to various discovery disputes that arose concerning the production of documents and depositions to be taken.   Sears' counsel was forced to file three separate motions to compel discovery responses, each of which was ultimately granted to the extent Carrier was compelled to produce additional discovery responses and documents.   (Doc. Nos. 103, 129, 169). Moreover, counsel for Sears spent considerable time sifting through lengthy and complex productions of statistical data and successfully moving to compel responsive statistical data from Carrier regarding Carrier's May 2006 Reduction-In-Force. In addition, Sears' counsel spent a great deal of time preparing and responding to numerous motions, including Carrier's motion for summary judgment.   In total, more than 200 documents were filed by the parties in this case.   In sum,

this case was complex and nearly every issue was hotly contested by the parties, resulting in considerable time spent by Plaintiff's counsel litigating the claims against Carrier.

All of the time spent by Sears' counsel in connection with this case was recorded and maintained in detailed time records and was essential to achieving the result obtained in this matter.   Counsel for Sears worked to avoid any duplication of effort and divided responsibilities among the attorneys and paralegals, where appropriate, to avoid duplication and to accomplish any tasks required most efficiently and cost effectively. Significantly, Plaintiff's counsel had a strong incentive to be efficient and avoid duplication of labor as counsel represented Sears on a contingent basis and was aware that if they were unsuccessful, counsel would be paid nothing for the time devoted to this case. Counsel for Sears have reviewed the billing records and eliminated approximately 160 hours in conceivably excessive or redundant charges.

Further, because the accepted Offer of Judgment specifically precluded the recovery of attorneys' fees or costs related to the claims Sears brought against UTC, counsel for Plaintiff have reviewed the billing records and removed

all time spent litigating issues related exclusively to Sears'
claims against UTC.  For instance, Plaintiff's counsel removed
any time spent litigating the applicability of the integrated
enterprise theory, preparing for and taking the deposition of
Anthony Sada, which was taken to establish that UTC and
Carrier were an integrated enterprise, and responding to
discovery propounded by UTC alone.  Specifically, Sears'
counsel have deleted a total of 276 hours from this fee
request based on work spent litigating issues related
exclusively to Sears' claims against UTC (28.1 for Bedell and
247.87 for Fortune).

Plaintiff anticipates that Carrier will argue that
Plaintiff's counsel's time should be reduced further to
account for time Plaintiff spent on the identical claims
against Carrier and UTC.  However, the law is clear that if a
successful claim and an unsuccessful claim are based on a
common core of facts or related legal theories, the fee award
may include compensation for legal work performed on the
unsuccessful claim.  The United States Supreme Court in
Hensley v. Eckerhart, 461 U.S. 424, 435 (1983), considered how
to determine a reasonable amount of attorneys' fees when a
plaintiff prevailed on some, but not all, claims.  Initially,

the <u>Hensely</u> Court explicitly rejected the notion that a court may calculate an award of attorneys' fees by means of a purely mathematical comparison between the number of claims presented and the number prevailed upon, observing that "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." 461 U.S. at 435, n.11. Rather, the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not.   When successful claims are not related to unsuccessful claims, it is easy to separate the time spent on the unsuccessful claim and it is not appropriate, therefore, to award fees for such time. <u>Id</u>. at 435.   However, when all claims "involve a common core of facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." <u>Id</u>.

For this reason, courts do not reduce fee awards for time spent on an unsuccessful claim when that claim and the successful claim are related or based on common facts and law. <u>See e.g.</u>, <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1137 (11th Cir. 1984) (court should not disallow hours spent on unsuccessful claims when such claims are related to

successful claims and the work performed was necessary to successful claims); Schneider v. Colegio de Abogados de Puerto Rice, 187 F.3d 30, 33 (1st DCA 1999) (because "the claims on which plaintiffs prevailed were 'reasonably related' to those on which the plaintiffs lost," the overall fee award need not be reduced based on the unsuccessful claim); Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 873 (7th Cir. 1995) (upholding award of attorneys' fees for claim which court never ruled on because that claim and the claim on which plaintiff prevailed were interrelated, had a "common core of facts," and were based on "related legal theories"); Casey v. City of Cabool, Mo., 12 F.3d 799, 806 (8th Cir. 1993) (award of attorneys' fees should not be reduced based on unsuccessful claims because "counsel's time [was] devoted to the case as a whole, rather than to specific theories" and the "dispositive consideration . . . is whether the issues upon which plaintiff's counsel spent time are interrelated to the central issues of the case"); Zuchel v. City and County of Denver, Co., 997 F.2d 730, 744 (10th Cir. 1993) (awarding attorneys' fees for claim settled by parties prior to trial because the settled claim was interrelated with the claims on which plaintiff prevailed; even if the settled claim had not been brought, plaintiffs' counsel would nonetheless have been

13

required to expend the time necessary to litigate the same issues); Wagenmann v. Adams, 829 F.2d 196, 225 (1st Cir. 1987) (holding that trial court properly compensated plaintiff's counsel for time related to state law claims because the state law claim was "so factually imbricated with the [federal claim] as to make separate treatment of the constituent attorney time inappropriate." Because the facts on which both the state and federal claims were based were the same, the claims were sufficiently interrelated to justify compensation for the state law claim).

Here, the claims brought against Carrier are inextricably intertwined, both factually and legally, with the claims brought against UTC. First, all three claims asserted by Plaintiff in the Second Amended Complaint (Doc. No. 72, filed January 22, 2008) - breach of contract, interference with ERISA benefits, and ERISA retaliation - were brought jointly against Carrier and UTC. Therefore, all claims against UTC were based on the *exact same* "common core of facts" and *identical* legal theories as the claims against Carrier. Hensley, 461 U.S. at 435. Consequently, Sears' counsel had to do the same work to establish the claims against Carrier and UTC and would have proceeded the same way throughout the

litigation had UTC never been named as a defendant.  In other words, the time sought by Sears' counsel was devoted to the case as a whole, rather than to discrete issues related to UTC.  The only time that could be considered unrelated to Sears' claims against Carrier is the time Sears' counsel spent attempting to establish that UTC and Carrier were integrated enterprises.  However, as stated above, Sears' counsel has reviewed the billing records and removed such time from its request for fees.  Because the claims against UTC and Carrier are factually and legally interrelated, Sears' fee award should not be further reduced based on Plaintiff's claims against UTC, especially in light of the significant reductions Plaintiff's counsel has already made.

Likewise, the hourly rates sought by Sears' counsel are reasonable.  The prevailing market rate is "the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services."  Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla. 1985); see also Ass'n of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359 (11th Cir. 2006)(same).  The rates sought by Sears' counsel for the work of the Bedell Firm and Fortune Law Offices are "reasonable and well within

the recognized and accepted range for lawyers of similar experience" in North Florida for legal services of a comparable or similar nature. See Exhibit B, Liles Declaration. Significantly, the rates sought by Sears are the rates that the Bedell Firm and Fortune Law Offices actually charge fee-paying clients for their services.

Accordingly, taking the number of hours reasonably expended by counsel and multiplying them by the reasonable hourly rates of counsel, a lodestar of $401,460.25 is produced to which Sears is entitled to recover for attorneys' fees he incurred litigating the claims against Carrier. See Exhibit B, Liles Declaration.

Moreover, in addition to the lodestar amount, Plaintiff is entitled to reimbursement for various out-of-pocket expenses. The phrase "reasonable attorney's fees" in section 1132(g)(2)(D) of ERISA has been interpreted to include not only billable time, but also additional out-of-pocket expenses so long as it is the prevailing practice in the community to separately bill such expenses to the client. See Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1255-59 (9th Cir. 2006); Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir., 1996);

<u>Cromer-Tyler v. Teitel</u>, 2007 WL 2684878, at *6 (M.D. Ala. Sept. 11, 2007); <u>see also</u> <u>Williams v. Consol. City of Jacksonville</u>, 2006 WL 4794173, at *11 (M.D. Fla. Sept. 11, 2006) (Corrigan, J.) (in Title VII case, noting that the statute's definition of reasonable attorneys' fees "include[s] reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone, and travel costs."). Expenses related to photocopying, long distance telephone calls, facsimile transmission, courier service, postage, attorney travel related to the case, computerized research, Federal Express, and electronic scanning are all recoverable as attorneys' fees under ERISA. See <u>Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Bd.</u>, 919 F.2d 374, 380 (5th Cir. 1990) ("[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in [attorneys'] fee awards because they are part of the costs normally charged to a fee-paying client.").

Here, Sears incurred counsel expenses of $12,242.83 ($7,000.99 for Bedell and $5,241.84 for Fortune), which expenses were reasonable and are customarily billed separately to fee-paying clients. See Exhibits C and D, DeVault and Fortune Declarations. These expenses "are customary and what one would expect to see in cases as this." See Exhibit B, Liles Declaration. The expenses sought to be reimbursed are only those expenses necessarily incurred in case preparation and during the course of litigation. The expenses include photocopy charges, courier charges, long distance telephone charges, charges for computerized research, attorney travel expenses related to the case, postage, and facsimile transmission charges.

In addition, Sears incurred taxable costs of $27,383.66, which costs are reasonable. See Exhibits C and D, DeVault and Fortune Declarations.[3] The costs sought to be reimbursed are reasonable and are only those costs necessarily incurred in case preparation and during the course of litigation. See Exhibit B, Liles Declaration. The costs include fees of the Clerk, filing fees, fees for printed or videotaped

_____

[3] The Bill of Costs, which is Exhibit 5 to Mr. Fortune's Declaration, has also been filed with the Clerk.

depositions, witness fees, and costs of printing. See
Morrison v. Reichhold Chemicals, Inc., 97 F.3d 460, 464-65
(11th Cir.) (the cost of transcribing and videotaping
depositions is recoverable under 28 U.S.C. § 1920 in the
Eleventh Circuit); Suppa v. Costa-Crociere, S.p.A., 2008 WL
4629078, at *2 (S.D. Fla. Oct. 17, 2008) (same).

Lastly, as provided by the accepted Offer of Judgment,
Sears is also entitled to pre-judgment interest. Because
there are multiple claims for which Plaintiff is being
compensated – two federal claims pursuant to ERISA and a
breach of contract claim pursuant to Florida law – and because
the Offer of Judgment does not specify the claims on which
pre-judgment interest applies or how it should be calculated,
there are several ways such interest can be computed. One way
to compute the figure would be for pre-judgment interest to
run from each separate breach of Plaintiff's incentive
compensation contracts at the Florida statutory interest rate
at the time of the breach. However, in the hopes of bringing
this matter to a swift conclusion, Plaintiff proposes a
conservative measure of computing pre-judgment interest
pursuant to the Offer of Judgment. Specifically, Sears
proposes that pre-judgment interest accrue from the date of

Plaintiff's termination, May 10, 2006, through the date of the Offer of Judgment at the applicable Florida statutory rates, which would render a pre-judgment interest figure of $48,685.42.[4]   Sears' proposed calculation for pre-judgment interest is attached hereto as Exhibit A.

WHEREFORE, in accordance with the accepted Offer of Judgment and this Court's Order dated February 25, 2009 (Doc. No. 220), Plaintiff Richard Eugene Sears respectfully requests this Court to enter an order awarding Plaintiff reasonable attorneys' fees, including counsel's out-of-pocket expenses, costs, and pre-judgment interest in an amount the Court determines to be just and reasonable against Defendant Carrier Corporation.

---

[4]     If the pre-judgment interest rate changes while pre-judgment interest is still accruing, the rate should be computed using the interest rate at the date of the loss until the date of the statutory amendment and, thereafter, the amended rate should be used.  See Trend Coin Co. v. Honeywell, 487 So.2d 1029, 1030 (Fla. 1986); Talking Walls, Inc. v. Hartford Casualty Ins. Co., 2005 WL 6011243, at *4 (N.D. Fla. July 5, 2005) (following Trend Coin and applying varying rates of pre-judgment interest for different years).

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association


By:   s\John A. DeVault, III
         John A. DeVault, III
         Florida Bar No. 103979
         Amanda Eaton Ferrelle
         Florida Bar No. 0913251
         The Bedell Building
         101 East Adams Street
         Jacksonville, Florida  32202
         Telephone:  (904) 353-0211
         Facsimile:  (904) 353-9307

              and

FORTUNE LAW OFFICES, P.A.
         Scott T. Fortune
         Florida Bar No. 342815
         1807 Third Street North
         Jacksonville Beach, FL 32250
         Telephone: (904) 246-2125
         Facsimile: (904) 246-1551

Attorneys Richard Eugene Sears

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  12th  day of March, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

G. Joseph Curley
Rebecca Cavendish
Gunster, Yoakley & Stewart, P.A.
Phillips Point, Suite 500 East
777 South Flagler Drive
West Palm Beach, Florida 33401


s\John A. DeVault, III
John A. DeVault, III
Florida Bar No. 103979
E-mail: jad@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone:  (904) 353-0211
Facsimile:  (904) 353-9307