UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD EUGENE SEARS,   Case No.:   3:07-CV-00005-HLA-JRK

    Plaintiff,

v.

CARRIER CORPORATION AND
UNITED TECHNOLOGIES CORP.,

    Defendants.
    _____/

## DEFENDANT UNITED TECHNOLOGIES CORP.'S MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT

Defendant United Technologies Corp. ("UTC"), pursuant to Fed. R. Civ. P. 54 and Fla. Stat. § 448.08, moves this Court for an award of its attorneys' fees and costs incurred defending against Plaintiff's breach of contract claim, and files this Memorandum of Law in Support thereof.

## I.
## INTRODUCTION

Plaintiff sued UTC and Co-Defendant Carrier Corporation ("Carrier") for breach of contract pursuant to Fla. Stat. § 448.08 and ERISA violations. [DE # 1]  Plaintiff ultimately amended his Complaint twice. [DE ## 30, 72]  UTC moved to dismiss each complaint on the basis that Plaintiff improperly lumped UTC and Carrier together, asserting liability for the same underlying factual allegations but alleging no actual wrongdoing by UTC. [DE ## 14, 31, 85]

Before the Court could rule on UTC's first motion to dismiss, Plaintiff amended his Complaint. However, in his Amended Complaint, UTC and Carrier were still lumped together improperly and UTC moved to dismiss again on the same basis as its previous motion to dismiss. [DE # 31]  This time, the Court ruled on UTC's motion, finding that Plaintiff failed to specify any wrongful acts on the part of UTC, granting UTC's motion to dismiss without prejudice and giving Plaintiff the opportunity to file a second amended complaint. [DE # 64]

Thereafter, Plaintiff filed his Second Amended Complaint. [DE # 72]  Count I of Plaintiff's Second Amended Complaint, the breach of contract claim, sought unpaid "incentive compensation" or commissions allegedly earned by Plaintiff. [DE # 72]  Yet again, Plaintiff's allegations of breach against UTC were not based on any action by UTC but on Carrier's actions. [DE # 85] at 3.  This time, Plaintiff attempted to impute Carrier's action on UTC on the basis of an alleged "highly integrated" relationship between UTC and Carrier without alleging any facts to support such a theory. *Id*.  Counts II and III were ERISA claims wherein Plaintiff alleged that UTC and Carrier, among other things, breached his incentive compensation contract to interfere with his pension benefits. [DE # 72]

UTC moved to dismiss Plaintiff's Second Amended Complaint on February 8, 2008.  Again, UTC argued that Plaintiff lumped UTC and Carrier together in his allegations without providing any specific allegations as to how UTC played a role and failed to allege any facts to support UTC's alleged "highly integrated" relationship with Carrier such that Carrier's actions could be imputed to UTC. [DE # 85] at 3-4.  UTC's

Motion to Dismiss the Second Amended Complaint (the "Motion to Dismiss") was granted on August 5, 2008, and UTC was dismissed as a party to the action.[1] [DE # 127] The Court found that Plaintiff failed to state a cause of action for breach of contract against UTC because Plaintiff failed to allege that UTC was a party to the contract. *Id.* at 10. A copy of the Order dismissing UTC from the case is attached hereto as Exhibit "A." In the interim, Plaintiff sent multiple, voluminous discovery requests to UTC, to which UTC was required to respond and engage in motion practice.

UTC and Carrier were both represented by the law firm of Gunster Yoakley & Stewart ("Gunster"). UTC expended $172,361.68 in attorneys' fees, $10,615.46 in litigation expenses, and $17,239.45 in costs defending against Plaintiff's breach of contract claim, and seeks recovery of these fees and costs pursuant to the authority set forth below.

---

[1] This Court has not yet ruled on UTC's entitlement to fees with respect to Plaintiff's unpaid wages claim. In its Motion to Dismiss, UTC made a request for its attorneys' fees and the Court denied UTC's request for fees under the ERISA statute, 29 U.S.C. § 1132(g). [DE # 127] (stating that it could not find that the ERISA claim was brought in bad faith). UTC sought fees in both its Motion to Dismiss the Complaint and its Motion to Dismiss the Second Amended Complaint, but even had it not, there is no waiver by not requesting fees in a motion to dismiss. *See Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000)(upholding an award of attorneys' fees to the prevailing party despite the fact that no demand for fees had previously been made in that party's pleadings or motions); *Kamel v. Kenco/The Oaks at Boca Raton, LP*, 2008 WL 3471594 (S.D. Fla. 2008)(defendant's entitlement to fees not waived by its failure to demand attorneys' fees in its motion to dismiss).

## II.
## MEMORANDUM OF LAW

A. **UTC IS ENTITLED TO AN AWARD OF ITS ATTORNEYS' FEES AND COSTS ASSOCIATED WITH DEFENDING AGAINST PLAINTIFF'S BREACH OF CONTRACT CLAIM.**

UTC is entitled to an award of its attorneys' fees and costs as the prevailing party in an employee's § 448.08 breach of contract claim. Pursuant to Fla. Stat. § 448.08, the court may award costs and reasonable attorneys' fees to the prevailing party in an action for unpaid wages. Florida courts have awarded fees and costs to an employer who prevails against a plaintiff employee in a § 448.08 claim. A fee award to a prevailing employer is appropriate even where there is no finding of bad faith as to the plaintiff employee. *See Laremont v. Absolute Health Care for Women of All Ages, P.A.*, 988 So.2d 735 (Fla. 4th DCA 2008)(upholding award of attorneys' fees to employer who prevailed on summary judgment of employee's breach of contract claim for unpaid wages where employee failed to establish mutual assent to the amount due).

A party is the prevailing party if that party succeeds on any significant issue in the litigation which achieves some of the benefit the parties sought. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *See Moritz v. Hoyt Enterprises, Inc.*, 604 So.2d 807, 809-10 (Fla. 1992). A defendant is the prevailing party when the plaintiff's claims against it are dismissed for failure to state a claim. *See Pellegrino v. Koeckritz Development of Boca Raton, LLC*, 2008 WL 4753726 (S.D. Fla. 2008).

In the instant matter, UTC is the prevailing party because Plaintiff's claims against it were dismissed for failure to state a cause of action. Plaintiff's breach of

contract claim is a claim for unpaid wages within the meaning of Fla. Stat. § 448.08.[2] Accordingly, and pursuant to Fla. Stat. § 448.08 and Fed. R. Civ. P. 54, UTC is entitled to its costs and reasonable attorneys' fees associated with defending against Plaintiff's breach of contract claim.

B.  **THE AMOUNT OF THE REQUESTED FEES IS REASONABLE.**

The Eleventh Circuit has adopted the lodestar method to determine a reasonable attorney's fee. *See American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 2008 WL 906739 (M.D. Fla. 2008), citing *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). To calculate the lodestar amount, the court must multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Id*. As explained below, the hourly rates of the Gunster attorneys who represented UTC were reasonable and the number of attorney hours expended on the litigation was reasonable.

   1.  <u>**The Hourly Rates Were Reasonable.**</u>

A reasonable hourly rate is based on the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Id*. The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed. *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The fee applicant bears the burden of producing satisfactory evidence that the

---

[2] Plaintiff sought attorney's fees pursuant to Fla. Stat. § 448.08 under the breach of contract claim in his Second Amended Complaint. [DE # 72] *See also* Plaintiff's Motion for Fees, Expenses, and Pre-Judgment Interest and Memorandum of Law [DE # 224] at 5, n 2.

requested rate coincides with the prevailing market rates. *Scelta v. Delicatessen Support Serv., Inc.*, 203 F.Supp.2d 1328, 1331 (M.D. Fla. 2002).  The fee applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Id*.  It is proper to award attorney's fees based solely on affidavits in the record. *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  The Middle District recently determined that $280 was a reasonable hourly rate for successful lead counsel in an employment case in the Jacksonville Division,[3] and that $250.00 is a reasonable hourly rate for a seven year attorney in an employment case in a comparable division of the Middle District.[4]

UTC's lead counsel was G. Joseph Curley.  Mr. Curley is a shareholder at Gunster who practices in the fields of employment litigation and commercial litigation.  Mr. Curley has been practicing law for twenty three (23) years and is AV-Rated.  Mr. Curley is board certified in business litigation and is Co-Chair of Gunster's Employment Practice Group.  Mr. Curley's hourly rate in this case was $285.00.

Mr. Curley was ably assisted by other attorneys and professionals at Gunster, primarily Rebecca Cavendish, Cristina Papanikos, Stephanie Moot, and Tammi Boske.  Rebecca Cavendish is a shareholder at Gunster and is AV-Rated.  Ms. Cavendish was

---

[3] *Reilly v. Duval County Public Schools*, 2007 WL 2120551 (M.D. Fla. 2007).  This case actually involved a fee application by Mr. Fortune, Plaintiff's counsel in the instant matter.  Mr. Fortune argued that his hourly rate of $295 was reasonable; defense counsel argued that the hourly rate of $260, which the Court had recently determined to be a reasonable hourly rate for Mr. Fortune in another employment case, was reasonable. *Id*.  The Court noted that the $260 rate applied in the previous case was reasonable for a lawsuit that began in 1999 and determined that $280 was reasonable for the subject lawsuit which began in 2004. *Id*.

[4] *Fischer v. Taylor Morrison Serv., Inc.*, 2008 WL 4790520 (M.D. Fla. 2008)(in Tampa Division of the Middle District).

admitted to the Florida Bar in 1998 and to the Bar of the Middle District of Florida in 1999.  Ms. Cavendish's hourly rate in this case was $210.00.  Cristina Papanikos is an associate at Gunster.  Ms. Papanikos was admitted to the Florida Bar in 2004 and to the Bar of the Middle District of Florida in 2005.  Ms. Papanikos's hourly rate in this case was $212.50.  Stephanie Moot was admitted to the Florida Bar in 2006 and to the Bar of the Middle District of Florida in 2007, and her hourly rate in this case was $148.00.  Tammi Boske is a paralegal at Gunster who received her Certified Legal Assistant's certificate in 2006.  Ms. Boske's hourly rate in this case was $102.00.

The above rates are reasonable hourly rates for lawyers with similar experience and reputation in the Jacksonville area and in the Middle District.  The affidavits and opinions of G. Joseph Curley, lead counsel, and John MacLennan, a well-recognized attorney who has practiced in the Jacksonville area since 1977, as well as the *Reilly* and *Fischer* cases, confirm that the above rates are reasonable hourly rates.  The affidavits of Mr. Curley and Mr. MacLennan are attached hereto as Composite Exhibit "B."  Like Mr. Fortune in *Reilly*, Mr. Curley has over twenty years of experience and served as lead counsel in this case.  Since Mr. Fortune's $280.00 rate was reasonable in a 2004 case, Mr. Curley's $285.00 rate is certainly more than reasonable for the instant case which was filed in 2007.  Likewise, the rates of the other Gunster attorneys who worked on this matter are more than reasonable and well below the $250.00 rate that the Middle District determined to be reasonable in *Fischer*.

### 2. The Number of Hours Expended Was Reasonable.

The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation. *See Scelta*, F.Supp.2d at 1332. A court may rely on fee records, affidavits, and its own knowledge and expertise in determining the reasonableness of the number of hours expended by an attorney. *See Cline v. Home Quality Management, Inc.*, 2005 WL 1972539, *1, 2 (S.D. Fla. 2005), citing *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). "[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which tasks might theoretically have been done." *Id*. Moreover, a client having multiple attorneys is not inherently unreasonable and all attorneys should be compensated as long as they did not unreasonably perform the same work. *Norman*, 836 F.2d at 1302.

Fee opponents are entitled to object to the reasonableness of the hours expended but such objections must be specific and reasonably precise. *Scelta*, 203 F.Supp.2d at 1332-33. Generalized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight. *Id*. All hours sought to be recovered that are not objected to will be accepted by the court. *Id*.

While time spent on distinct noncompensable claims[5] should be excluded from a fee application, a nonparticularized time entry that includes work on a compensable claim and a noncompensable claim can be cured by reducing the corresponding fee by a

---

[5] claims for which fees cannot be recovered

percentage. *Id*. at 1334-1336. In *Scelta v. Delicatessen Support Serv., Inc.*, the Middle District allowed recovery of fees for nonparticularized time entries that did not designate how much time was spent on the compensable issue by reducing the fee for those entries by a percentage proposed by the defendant. *Id*. at 1335. In that case, the plaintiff employee objected to a recovery of fees on the basis of the lack of specificity in the subject billing entries because the entries included work related to noncompensable claims. *Id*. at 1334. The defendant fee applicant proposed that the fee for these entries be reduced by a percentage to account for the noncompensable work since the appropriate compensation could not be calculated by simply excluding specific hours. *Id*. at 1336. The Middle District agreed and awarded the defendant fees for the nonparticularized entries compensable less a fifteen percent reduction. *Id*. at 1335-1336. *See Id.*

UTC is seeking an award for 914.65 hours for defending Plaintiff's breach of contract claim. This number of hours is reasonable, as explained below and as supported by the attached time sheets and affidavits.

The time sheets attached hereto as Composite Exhibit "C" show the time entries containing work performed on behalf of UTC relative to the breach of contract claim. The time sheets show a total of 1,829.30 hours yielding $344,723.30 in fees, and UTC proposes a 50% reduction for the fees reflected on the attached time sheets, as explained later in this section, for an adjusted total of 914.65 hours yielding $172,361.68 in fees. UTC's defense of Plaintiff's breach of contract claim required work that can primarily be placed in the following categories:

      a.    Motions to Dismiss: Preparation of UTC's motions to dismiss,[6] including research associated with the motion and of possible defenses.

      b.    Discovery: UTC was forced to participate in discovery prior to its dismissal from the case. This involved reviewing voluminous documents to prepare discovery responses, and preparing for and either taking or defending various depositions.

      c.    Motion Practice: UTC was forced to engage in motion practice prior to its dismissal, including motions associated with its objections to discovery and its discovery responses along with a motion for protective order to prevent a deposition of a UTC corporate representative.

Because these time entries also contain noncompensable work performed relative to the ERISA claims against UTC or to Carrier, UTC proposes a 50% reduction of these time entries to account for work performed on the noncompensable claim included in each entry. The first spreadsheet in Composite Exhibit "C" displays time entries that are relative to UTC only but that may contain work relative to both the breach of contract and ERISA claims against UTC. Plaintiff's breach of contract claim is inextricably related to his ERISA claims as Plaintiff argued that UTC interfered with Plaintiff's pension benefits and retaliated against him by, among other things, breaching his incentive compensation contract. The interrelatedness of the claims against UTC made it difficult, if not impossible in some instances, to designate the amount of time in each entry spent benefiting the breach of contract claim versus the ERISA claims. UTC proposes a 50%

---

[6] UTC is seeking fees only for the motions to dismiss with respect to the Complaint and Second Amended Complaint. Because Plaintiff's Amended Complaint did not include a breach of contract claim against UTC, the motion to dismiss the Amended Complaint was not included in the attached time sheets and UTC is not seeking recovery of these fees.

reduction of these entries which is more than fair and, if anything, places the risk of error upon UTC because of the interrelatedness of the claims.

The second spreadsheet in Composite Exhibit "C" displays time entries that contain work relative to UTC and Carrier, including responding to discovery and preparing for and taking depositions. Most of UTC's discovery responses were prepared on behalf of both UTC and Carrier because, for example, four of the five requests for production propounded to UTC by Plaintiff were directed to both UTC and Carrier. Similarly, the depositions in this case were taken or defended on behalf of both UTC and Carrier. Many of the depositions were of Carrier managers and employees who were asked numerous questions about UTC's corporate structure, along with questions related to facts underlying the breach of contract claim, the relationship between UTC and Carrier as well as the witness's own relationship with UTC. This line of questioning related to Plaintiff's theory that UTC and Carrier were joint employers in support of both the breach of contract and ERISA claims against UTC. Like the interrelatedness of the claims against UTC, the interrelatedness in the discovery process between the claims against UTC and the claims against Carrier made separating out the tasks relative to each defendant not practical or, in many instances, impossible. Again, in light of the foregoing, a 50% reduction of these entries is more than fair and places the risk of error upon UTC even though it was Plaintiff's decision to simply (and inappropriately) lump UTC together with Carrier.

UTC's attorneys were forced to participate in time-consuming, cumbersome and unwieldy discovery and motion practice that was incited and driven, for the most part, by

Plaintiff.  Much of the motion practice that UTC was involved in was prompted by Plaintiff's objectionable discovery requests to UTC, and UTC was often victorious in these discovery disputes. MacLennan Aff.; Composite Exhibit "C."  In addition, Plaintiff's numerous discovery requests to UTC while UTC's Motion to Dismiss was pending forced UTC to produce over 10,000 documents, which required UTC's attorneys to spend countless hours reviewing tens of thousands of documents. *Id*.  More specifically, Plaintiff propounded over 251 document requests, 193 interrogatories, and 73 requests for admission to either UTC or UTC and Carrier together and to which UTC had to respond. *See* Curley Aff.

    **3.**    **UTC Should Be Awarded Its Litigation Expenses as Part of Its Fee Award**

Out-of-pocket expenses incurred by the attorney which are typically charged to a client in the course of providing legal services are recoverable by a prevailing party who is entitled to its attorney's fees as part of its attorney's fees award if the expenses are incidental and necessary to the litigation.  *See Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 268817, *14-15 (S.D. Fla. 2008); *Fla. Key Deer v. Board of Co. Comm. for Monroe Co.*, 772 F.Supp. 601, 604 (S.D. Fla. 1991)(reasonable travel expenses in appearing for various hearings were recoverable as part of the prevailing party's attorney's fees); *Data General Corp. v. Grumman Systems Support Corp.*, 825 F.Supp. 361, 366-67 (D. Mass 1993)(prevailing party may be awarded, as part of the attorney's fees award, the costs of

courier service, computer research, local travel, meals, telephone postage and parking).[7] These litigation expenses can include travel costs, computer research and courier services. *See Id.*

In the instant matter UTC was charged for out-of-pocket expenses incurred by Gunster for courier/delivery services, travel, phone charges, and computer research in the total amount of $10,615.46 in its defense of Plaintiff's breach of contract claim, as shown on Exhibit "D."  These expenses were incidental and necessary to the litigation and should be recovered by UTC as part of its award of a reasonable attorney's fee. *See* Curley Aff.  UTC incurred expenses in the amount of $7,709.04 for its attorneys to travel to various depositions, most of them out of state. *Id*.  UTC's attorneys were required to travel out of state to defend the depositions of employees and former employees of Carrier[8] which Plaintiff took to establish facts to support his breach of contract claim and single enterprise theory. *Id*.  UTC also incurred $289.98 for delivery/courier services, $2,459.50 for Westlaw computer research services, and $156.94 for long distance charges for telephonic depositions.

C.     **THE AMOUNT OF THE REQUESTED COSTS IS REASONABLE**

UTC is entitled to recovery of its costs associated with its defense of Plaintiff's breach of contract claim against it pursuant to Fla. Stat. § 448.08 and Fed. R. Civ. P. 54.

---

[7] The *Jackson* and *Grumman Systems* cases deal with fee awards under the Copyright Act which, just like Fla. Stat. § 448.08, authorizes the award of "a reasonable attorney's fee to the prevailing party." 15 U.S.C. § 505.  There is no pressing public policy matters underlying the Copyright Act, as may be the case with some civil rights statutes, that would call for any broader of a definition of "reasonable attorney's fee" than Fla. Stat. § 448.08 provides.

[8] Kelly Cutchins in Atlanta, Georgia; Jim Ottoman in Chicago, Illinois; Sandy Porzucek, Nicole Mehlek, and Anthony Sada in Syracuse, New York; Ivelis Alday in California.

Costs recoverable pursuant to Rule 54 are governed by the federal statute on Taxation of Costs, 28 U.S.C. § 1920. Pursuant to this statute, costs may be awarded for transcripts of depositions necessarily obtained for use in the case. 28 U.S.C. 1920(2); *EEOC v. W & O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). Costs may also be awarded for expenses related to the services of private process servers. *See EEOC*, 213 F.3d at 623-24. Finally, Costs may also be awarded for fees and disbursements for printing and witnesses. 28 U.S.C. § 1920(4).

UTC seeks recovery of the costs shown on the Bill of Costs attached hereto as Exhibit "E" and filed contemporaneously with the instant Motion.

UTC paid $16,451.12 for deposition transcripts that it needed to obtain for use in the case. *See* Curley Aff. Many of these depositions were cited in motions filed with respect to the various discovery disputes, in addition to being necessary to UTC's defense of the breach of contract claim. *Id*.

UTC paid $285.45 for service of its subpoena by private process servers. UTC also paid $168.85 in fees and travel expenses of witnesses. *Id*. Finally, UTC paid $334.03 in printing costs that were necessary for its defense of the breach of contract claim. *Id*.

The total UTC incurred for the above costs which were necessary to its defense of Plaintiff's breach of contract claim is $17,239.45.

### III.
### CONCLUSION

UTC prevailed on Plaintiff's breach of contract claim for unpaid wages and is entitled to an award of its costs and reasonable attorneys' fees associated with its defense

of this claim pursuant to Fla. Stat. § 448.08.  The amount of fees requested by UTC is reasonable and is supported by the affidavits of G. Joseph Curley and John MacLennan as well as the case law cited herein.  Therefore, UTC requests an award of its attorneys' fees in the amount of $172,361.68, its litigation expenses in the amount of $10,615.46 and its costs in the amount of $17,239.45 that were all incurred by UTC defending against Plaintiff's breach of contract claim, for a total award of $200,216.59.

## CERTIFICATE OF COMPLIANCE WITH RULE 3.01 (G)

The undersigned has conferred with Plaintiff's counsel regarding this Motion. Plaintiff opposes the Motion.

          s/ G. Joseph Curley
G. Joseph Curley
(Bar No. 571873)
jcurley@gunster.com
Rebecca C. Cavendish
(Bar No. 0152153)
rcavendish@gunster.com
Attorneys for Defendants
Gunster, Yoakley & Stewart, P.A.
Phillips Point - Suite 500 East
777 South Flagler Drive, Suite 500 East
West Palm Beach, Florida  33401-6194
Telephone:    (561) 655-1980
Facsimile:     (561) 655-5677

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

          s/ G. Joseph Curley
G. Joseph Curley
(Bar No. 571873)
jcurley@gunster.com
Rebecca C. Cavendish
(Bar No. 0152153)
rcavendish@gunster.com
Attorneys for Defendants
Gunster, Yoakley & Stewart, P.A.
Phillips Point - Suite 500 East
777 South Flagler Drive, Suite 500 East
West Palm Beach, Florida  33401-6194
Telephone:    (561) 655-1980
Facsimile:     (561) 655-5677

Case No.: 3:07-CV-00005-HLA-JRK

**SERVICE LIST**
*Richard Eugene Sears v. Carrier Corporation and United Technologies Corp.*
**Case No.:     3:07-cv-00005-HLA-JRK**
**United States District Court, Middle District of Florida**

| | |
|---|---|
| Scott Thomas Fortune, Esq.<br>SFortune@FortuneLegal.com<br>Fortune Law Offices<br>1807 North Third Street<br>Jacksonville Beach, Florida  32250<br>Telephone:     (904) 246-2125<br>Facsimile:     (904) 246-1551<br>Attorneys for Plaintiff<br>[served via CM/ECF] | G. Joseph Curley, Esq.<br>jcurley@gunster.com<br>Rebecca C. Cavendish, Esq.<br>rcavendish@gunster.com<br>Gunster, Yoakley & Stewart, P.A.<br>Phillips Point - Suite 500 East<br>777 South Flagler Drive<br>West Palm Beach, Florida  33401-6194<br>Telephone:     (561) 655-1980<br>Facsimile:     (561) 655-5677<br>Attorneys for Defendants<br>[served via CM/ECF] |
| John A. DeVault, III, Esq.<br>jdevault@bedellfirm.com<br>Amanda Eaton Ferrelle, Esq.<br>aferrelle@bedellfirm.com<br>Bedell, Dittmar, DeVault, Pillans, P.A.<br>The Bedell Building<br>101 East Adams Street<br>Jacksonville, Florida  32202<br>Telephone:     (904) 353-0211<br>Facsimile:     (904) 353-9307<br>Attorneys for Plaintiff<br>[served via CM/ECF] | |