UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD EUGENE SEARS,

        Plaintiff,

v.                                CASE NO.  3:07-CV-00005-J-25JRK

CARRIER CORPORATION and
UNITED TECHNOLOGIES CORP.,

        Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Richard Eugene Sears' Motion for Fees, Expenses, and Pre-Judgment Interest (Dkt. 224), Defendant Carrier Corporation's Opposition thereto (Dkt. 231), and Defendant Carrier Corporation's Agreed Motion to Review Clerk's Action (Dkt. 230); Defendant United Technologies Corp.'s Motion for Attorneys' Fees and Costs (Dkt. 226), Plaintiff's Memorandum of Law in Opposition thereto (Dkt. 232), and Defendant United Technologies Corp.'s Reply to Plaintiff's Opposition to UTC's Motion for Attorneys' Fees and Costs (Dkt. 235); United Technologies Corp.'s Proposed Bill of Costs (Dkt. 227), and Plaintiff's Objection thereto (Dkt. 229).

1

## I.    Background

On January 4, 2007, Plaintiff, Richard Eugene Sears ("Sears"), filed a Complaint against Defendants, Carrier Corporation ("Carrier") and United Technologies Corp. ("UTC"), pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Florida common and statutory law. (*See* Dkt. 1.) Plaintiff alleged Defendants violated Section 510 of ERISA, 29 U.S.C. § 1140, and breached their contractual obligation to pay him incentive compensation. (*Id.*)

On June 6, 2007, Plaintiff filed an Amended Complaint, dropping Defendant UTC from the breach of contract claim. (*See* Dkt. 30.) On December 19, 2007, the Court dismissed the action without prejudice as to Defendant UTC only. (Dkt. 64.) On January 22, 2008, Plaintiff filed his Second Amended Complaint against both Carrier and UTC, alleging breach of contract, ERISA interference, and ERISA retaliation. (Dkt. 72.) On February 8, 2008, Carrier filed its Answer to the Second Amended Complaint. (Dkt. 86.)

On August 5, 2008, the Court again dismissed Defendant UTC from the lawsuit and granted Plaintiff leave to file a Third Amended Complaint, which Plaintiff failed to do. (Dkt. 127.) On February 25, 2009, pursuant to Plaintiff's

Motion for Entry of Judgment Pursuant to Offer[1] (Dkt. 218), the Court directed the Clerk to enter judgment in favor of Plaintiff and against Defendant Carrier in the amount of $170,000.00, and retained jurisdiction for the purpose of determining the amount of Plaintiff's costs, reasonable attorneys' fees, and pre-judgment interest. (Dkt. 220.) On February 26, 2009, the Clerk entered judgment accordingly. (Dkt. 221.) On March 2, 2009, the Clerk entered judgment in favor of Defendant UTC and against Plaintiff (Dkt. 223), pursuant to the Court's February 26, 2009 Order (Dkt. 222), which granted UTC's Motion for Entry of Separate and Final Judgment (Dkt. 207).

## II.    Discussion

### A.    Richard Eugene Sears' Motion for Fees, Expenses, and Pre-Judgment Interest

Pursuant to the Court's February 25, 2009 Order (Dkt. 220), Plaintiff moves the Court for entry of an order against Defendant Carrier for reimbursement of the attorneys' fees and expenses Plaintiff incurred in connection with his claims against Carrier and pre-judgment interest. (Dkt. 224.)

---

[1] Carrier's Offer of Judgment "specifically includes an offer to pay Plaintiff's taxable court costs accrued as of the date of this offer, including reasonable attorneys' fees to be determined by the Court, relating only to the claims against Carrier, and pre-judgment interest." (Dkt. 218-2.)

### 1.    Pre-Judgment Interest

Plaintiff seeks pre-judgment interest from the date of his termination,

May 10, 2006, to the date of the Offer of Judgment, February 6, 2009,

totaling $48,685.42 if computed at Florida's statutory interest rates then in

effect. (Dkts. 224 & 224-2.) Because Carrier does not object and the Offer

of Judgment specifically includes an offer to pay Plaintiff's pre-judgment

interest (see Dkts. 218-2 & 231), pre-judgment interest in the amount of

$48,685.42 is due to be awarded to Plaintiff.

### 2.    Out-of-Pocket Expenses

Plaintiff seeks out-of-pocket expenses incurred through the date of the

Offer of Judgment in connection with his claims against Carrier in the amount

of $12,242.83: $7,000.99 for the expenses of Bedell, Dittmar, DeVault, Pillans

& Coxe, P.A. ("Bedell firm"), and $5,241.84 for the expenses of Fortune Law

Offices. (Dkt. 224.) Carrier does not object. See Dkt. 231.) In addition, the

Declaration of Rutledge R. Liles demonstrates that the out-of-pocket

expenses incurred by the Bedell firm are reasonable and justified. (Dkt. 224-

3, ¶ 12.)

Accordingly, the Court will award Plaintiff out-of-pocket expenses in the

amount of $12,242.83.

### 3.   Attorneys' Fees

Plaintiff seeks attorneys' fees incurred through the date of the Offer of Judgment in connection with his claims against Carrier in the amount of $401,460.25: $82,041.50 for the services of the Bedell firm and $319,418.75 for the services of Fortune Law Offices.  (Dkt. 224.)

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

#### a.   Bedell Firm

Plaintiff seeks reimbursement for 379 hours expended by the Bedell firm.  (Dkt. 224.)  The firm has deleted   28.1 hours for time spent litigating UTC issues.  The Declaration of Rutledge R. Liles demonstrates that the hours sought are reasonable.  (Dkt. 224-3, ¶ 9.)

Carrier urges the Court to reduce the time spent on claims brought against both UTC and Carrier based on the explicit exclusion of fees related

to the claims against UTC in the agreement. (Dkt. 231.) Some of the time entries that Carrier seeks to eliminate are for discovery directed only to UTC and some are for discovery directed to UTC and Carrier jointly, but according to Carrier, the latter contain requests directed solely to UTC. (*Id.* at 10 n.8.) Plaintiff argues that the claims asserted against Carrier are inextricably intertwined, both factually and legally, with the claims brought against UTC, and that only the time spent on the integrated enterprise theory should be deducted. (Dkt. 224.)

The Court has reviewed the time entries in question and finds no indication that the discovery was directed solely to UTC. In addition, the Court believes that the motions to compel filed during the relevant time period did not involve requests directed solely to UTC. Further, all claims asserted against UTC were also asserted against Carrier and Plaintiff needed to develop the facts concerning these claims.

Therefore, the Court will not reduce the time spent on the claims asserted against both UTC and Carrier. *See Hensley,* 461 U.S. at 435 (stating that where the plaintiff's claims "involve a common core of facts" or are "based on related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours

6

expended on aclaim-by-claim basis"); *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1137 (11th Cir. 1984) (stating that "the court should not disallow hours that were related and necessary to the successful claims" and that "the plaintiff had to develop fully the facts concerning his employment for the court to be able to evaluate his contentions; thus, even if only the wage claim were ultimately successful, the time spent developing facts concerning the hiring and promotion claims would be compensable if these facts were also probative on the wage claim").

Carrier also points out that Plaintiff's attorneys have not eliminated time spent on correcting their own misrepresentations in pleadings regarding witness testimony, that the time relating to the stricken statistical analysis should not be recovered as Plaintiff's efforts were frivolous, and that Plaintiff should not recover for clerical work, working on motions that were never filed, or attending a deposition by a law clerk. (Dkt. 231.)

The Court agrees that the time spent by Plaintiff's lawyers correcting their own errors should not be reimbursed. *See Mobley v. Apfel*, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000); *Sanfilippo v. Comm'r of Soc. Sec.*, 2008 WL 1957836, at *2 (M.D. Fla. May 5, 2008). Similarly, Plaintiff should not recover for the time relating to the stricken statistical analysis. *See Brown v. Bolger*,

7

102 F.R.D. 849, 859 (D.C. 1984) (stating "counsel will not be compensated for hours in which she or he engaged in frivolous or unnecessary work"). In addition, Plaintiff should not recover for any unnecessary or unreasonable hours. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). Therefore, the Court will deduct three hours from the 27.80 hours spent on the case by John A. DeVault and 46 hours from the 330.90 hours expended by Amanda E. Ferrelle.

Carrier also states that a number of entries are redacted, which makes it impossible to determine whether the hours spent were reasonable or unobjectionable. (Dkt. 231.) "[W]here a significant number of entries are severely redacted . . . , it may be an abuse of discretion to award fees based on the redacted entries." *Oxford Asset Mgmt., Ltd v. Jaharis*, 297 F.3d 1182, 1197 (11th Cir. 2002). On the other hand, where "there is no indication that fee counsel has failed to exercise billing judgment, the total amount of time spent on 'research' is reasonable, and the number of entries that fail to contain details about what research is being performed is relatively small, it is within the district court's discretion to include those hours in the award." *Id.*

Here, only a few entries are significantly redacted, the number of entries that do not contain details about what research is being performed is relatively

8

small, and the amount of time spent on research is reasonable. ( See Dkt. 231-4.) Therefore, these hours will be included in the award.

Finally, Carrier points out that certain objectionable entries are block-billed, or grouped together with non-objectionable tasks without allocating the time spent on each task. (Dkt. 231.) Carrier argues that every entry that contains an objectionable task should be eliminated, or at least, significantly reduced to account for the vast amount of time spent on objectionable tasks. (Id.)

The Court agrees that most entries are block-billed. (See Dkt. 231-4.) Nevertheless, the Court finds it unnecessary to eliminate or reduce the hours in the entries that contain objectionable tasks because the Court has already addressed each objectionable category and decided as to whether the hours should be reduced or eliminated.

In sum, with respect to the Bedell firm, the Court will allow reimbursement as follows: John A. DeVault - 24.80 hours, Amanda Ferrelle - 284.90 hours, Angela K. Marino - 4.30 hours, Michael E. Lockamy - 3.25 hours, Andrea Bailey - 2.70 hours, Erica Cruzat - 1 hour, Katie Baranek - 9 hours. Carrier does not seem to oppose the hourly rates [2] submitted by the

---

[2] These rates are as follows: John A. DeVault - $375.00, Amanda Ferrelle - $210.00, Angela K. Marino - $110.00, Michael E. Lockamy - $110.00, Andrea Bailey -

Bedell firm. Moreover, the Declaration of Rutledge R. Liles demonstrates that

the rates are well within the recognized and accepted range for lawyers of

similar experience. (Dkt. 224-3, ¶ 9.) Therefore, the Court adopts these rates

and finds that Plaintiff should recover a total of $71,256.50 in attorneys' fees

for the services of the Bedell firm.

### b.   Fortune Law Offices

Plaintiff seeks $319,418.75 in attorneys' fees for the services of Fortune

Law Offices. Plaintiff states the Declaration of Rutledge R. Liles shows that

this amount is reasonable and is a 25% reduction of Mr. Fortune's time and

a 30% reduction of his law clerk's time.[3]  (Dkt. 224.) Plaintiff points out that

these reductions were applied after deletion of 247.87 hours for time spent

pursuing UTC claims and 159.4 hours based on billing judgment. (*Id.*; Dkt.

224-5, ¶ 12.)

Carrier argues that not all time spent on UTC issues was deleted, that

the entries relating to discovery or motion practice directed solely to UTC

---

$110.00, Erica Cruzat - $100.00, and Katie Baranek - $100.00. (Dkt. 231-4.)

[3] Before the 25% and 30% reduction, the amount of attorneys' fees was
$433,197. (Dkt. 224). Carrier claims, however, that it had to apply a 25% and 30%
reduction to all time entries relative to Mr. Fortune and his law clerk, Mr. Gjoka,
respectively, because these reductions are not present in their time records. (Dkt. 231.)

10

should have been deleted, and that even when Plaintiff reduced the time spent on UTC issues, Plaintiff deleted only a fraction of the time that should have been deleted. (Dkt. 231.)

The Court agrees that not all time spent on UTC issues was deleted. Several of Mr. Fortune's entries between March 6, 2007 and December 8, 2008, as well as few of Mr. Gjoka's entries between April 17, 2007 and December 8, 2008, include hours spent on UTC issues. In addition, the Court agrees that several reductions were insufficient. Therefore, the Court will delete 33.16 hours from Mr. Fortune's hours and 8.17 hours from Mr. Gjoka's hours.[4]

The Court has already determined that Plaintiff should not be reimbursed for time spent by his lawyers and their staff correcting their own errors, for time relating to the stricken statistical analysis, and for time spent on unnecessary or unreasonable tasks. Therefore, the Court will eliminate 51.67 hours from Mr. Fortune's entries and 63.65 hours from Mr. Gjoka's entries.

---

[4] Carrier also argues there are entries relating to discovery or motion practice directed solely to UTC, even though the discovery was directed to UTC and Carrier jointly. The Court finds no indication that the discovery or motion practice was directed solely to UTC and, thus, will not reduce the time spent on claims brought against both UTC and Carrier.

. Carrier also points out that a number of entries are redacted, which makes it impossible to determine whether the hours were reasonable or unobjectionable. (Dkt. 231.) The Court notes that none of Mr. Fortune's and Mr. Gjoka's entries are severely redacted, the number of redacted entries is relatively small, and the vast majority of the redacted entries contain sufficient information regarding the tasks performed. ( See Dkts. 231-2 & 231-3.) Moreover, in many instances a general description of the redacted information is provided in brackets. (See Dkt. 231-2.) Therefore, the redacted entries will not be excluded.

Based on the findings above, Mr. Fortune is left with 839.84 hours and Mr. Gjoka with 804.68 hours. The Court notes, however, that Carrier correctly observes that a 25% reduction and a 30% reduction is not present in Mr. Fortune's and Mr. Gjoka's time records. Therefore, applying the appropriate reduction, the Court finds that Plaintiff should be reimbursed for 630 hours (839.84 minus 25%) expended by Mr. Fortune and 563 hours (804.68 minus 30%) expended by Mr. Gjoka.[5]

The Court will now address the reasonableness of the hourly rates

---

[5] In light of the 25% and the 30% reduction and the fact that the Court has addressed each objectionable category separately, the Court finds it unnecessary to further reduce or eliminate any hours in the block-billed entries containing objectionable tasks.

charged by Mr. Fortune and his law clerk, Mr. Gjoka. Plaintiff seeks fees from

October 19, 2004 through February 5, 2009 for Mr. Fortune's services and

from March 22, 2005 through February 5, 2009 for Mr. Gjoka's services.

Plaintiff argues that Mr. Fortune's rate of $350.00 per hour is reasonable and

well within the recognized and accepted range for lawyers of similar

experience in North Florida for legal services of a comparable nature. (Dkt.

224.) Plaintiff submits that the hourly rate of Mr. Gjoka is $125.00.

Carrier does not dispute that an hourly rate of $125.00 is reasonable for

the services of Mr. Gjoka. (See Dkt. 231-6 at 2.) Carrier argues, however,

that an hourly rate of $350.00 is unreasonable for the services of Mr. Fortune

through 2008 because Mr. Fortune did not charge at this rate until

approximately July 2008. (Dkt. 231.) Carrier also points out that this Court

has determined that a rate of $280.00 per hour is reasonable for Mr. Fortune

for his time in 2006 and 2007 and, therefore, an hourly rate of $285.00 is

more reasonable for Mr. Fortune's time in this case, which is the same as the

rate of Carrier's lead counsel whose experience is commensurate with Mr.

Fortune's. (Id.)

"A reasonable hourly rate is the prevailing market rate in the relevant

legal community for similar services by lawyers of reasonably comparable

skills, experience, and reputation."     *Norman*, 836 F.2d at 1299.     "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* "It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303. The weight that opinion evidence should be given is "affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.* at 1299.

The court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value," particularly "where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support." *Id.* at 1303. In determining the reasonableness of the hourly rate, the court may also consider the twelve factors [6] enumerated in

_____

[6] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the

*Johnson. Loranger v. Stierheim*, 10 F.3d 776, 781 n.6 (11th Cir. 1994).

As an initial matter, the Declaration of Mr. Fortune demonstrates that he has been charging his clients $350.00 per hour since approximately July 2008. (Dkt. 224-5, ¶ 10.) Therefore, an hourly rate of $350.00 is not appropriate for Mr. Fortune's services at least prior to 2008. In 2007, this Court concluded that $280.00 is a reasonable hourly rate for Mr. Fortune and $100.00 is a reasonable hourly rate for Mr. Gjoka for work performed between 2004 and 2007 in a case brought under the Age Discrimination in Employment Act. *Reilly v. Duval County Pub. Schs.*, 2007 WL 2120551, at *2 (M.D. Fla. July 23, 2007). In addition, in 2008 this Court determined that an hourly rate of $280.00 for Mr. Fortune and $100.00 for Mr. Gjoka is reasonable for their time in a protracted and hotly contested Title VII employment discrimination case covering the period June 2006 through July 2007. *Williams v. Consol. City of Jacksonville*, 2008 WL 1843993, at *2 (M.D. Fla. Apr. 22, 2008).

The Declaration of Mr. Fortune shows that he has been a member of the Florida Bar since 1982 and that since 1985, when he established his own law

---

"undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

firm, he has represented only plaintiffs in employment discrimination litigation, including cases arising under Section 510 of ERISA. (Dkt. 224-5, ¶ 4.) The Declaration of Rutledge R. Liles demonstrates that the hourly rates for Mr. Fortune and his staff are reasonable, that the case was difficult and complex, that the result obtained was exceptional, that the subject area of law was unique, and that taking the case on a contingent fee basis presented a great risk to the firms. (Dkt. 224-3, ¶¶ 7, 11 & n.1.)

In view of the opinion evidence presented in this case, the Court's own knowledge and experience in determining reasonable fees, the relevant case law, the contingent fee arrangement, and Mr. Fortune's experience in similar matters, the Court finds that an hourly rate of $325.00 is reasonable for Mr. Fortune's services. The Court also finds that an hourly rate of $125.00 is reasonable for Mr. Gjoka's services. The complexity of issues and the results obtained in this case justify the Court's decision to award a higher hourly rate than that awarded in Mr. Fortune's earlier cases before this Court, but the hours expended on the case by Mr. Fortune and his law clerk do not support an hourly rate above $325.00. See Norman, 836 F.2d at 1306.

Multiplying Mr. Fortune's 630 hours by the established hourly rate of $325.00 produces a fee of $204,750.00. Multiplying Mr. Gjoka's 563 hours

by his hourly rate of $125.00 produces a fee of $70,375.00. Thus, the total fee for the services of Fortune Law Offices is $275,125.00. When the Court combines this sum with the attorneys' fee award for the services of the Bedell firm, the total amount of fees that Plaintiff should recover in this case is $346,381.50.

### 4.    Taxable Costs

Plaintiff seeks $27,383.66 in taxable costs incurred by Fortune Law Office. (Dkt. 224.) On March 16, 2009, the Clerk taxed certain fees totaling $27,383.66 as costs. (Dkt. 228.) Carrier moves the Court to review the Clerk's action, arguing that the copying costs are not taxable under 28 U.S.C. § 1920(4) because the information provided by Plaintiff is insufficient to support a determination that the copies were necessarily obtained for use in this case. (Dkt. 230.) Therefore, Carrier argues, the copying charges should be deducted from the total amount of costs taxed against Carrier. (*Id.*)

Carrier's Motion to Review Clerk's Action (*Id.*) indicates that Plaintiff has agreed to a reduction in the amount of $905.17, which would put the total amount of costs taxed against Carrier at $26,478.49. Thus, Defendant Carrier Corporation's Agreed Motion to Review Clerk's Action (*Id.*) is due to be granted, the taxation of costs is due to be vacated, and Plaintiff will be

awarded costs in the amount at $26,478.49.

## B. Defendant United Technologies Corp.'s Motion for Attorneys' Fees and Costs

Pursuant to Rule 54 of the Federal Rules of Civil Procedure and Section 448.08 of the Florida Statutes, Defendant UTC seeks attorneys' fees in the amount of $172,361.68, litigation expenses in the amount of $10,615.46, and costs in the amount of $17,239.45, incurred defending against Plaintiff's breach of contract claim. (Dkt. 226.) UTC argues it is entitled to an award of attorneys' fees and costs as the prevailing party in Plaintiff's breach of contract claim, which is a claim for unpaid wages within the meaning of Section 448.08,[7] because Plaintiff's claims against UTC were dismissed for failure to state a cause of action. (*Id.*)

Plaintiff responds that UTC's Motion contradicts the language and spirit of the Offer of Judgment and that the Court has already ruled that UTC is not entitled to fees incurred in defending this action. (Dkt. 232.) Plaintiff also argues that UTC is not a prevailing party because it did not prevail on any significant issue, but even if UTC could be considered a prevailing party, it is not entitled to attorneys' fees because there is no evidence of bad faith or

---

[7] "Unpaid commissions are considered wages for purposes of section 448.08." *Hingson v. MMI of Fla., Inc.*, 8 So.3d 398, 401 (Fla. Dist. Ct. App. 2009).

frivolity on the part of Plaintiff, or any other equitable basis for an award. (*Id.*)

The Court finds no merit in Plaintiff's contention that UTC's Motion contradicts the language and spirit of the Offer of Judgment. Despite the language in the Offer of Judgment that it "does not include an offer to pay attorneys' fees or costs relating to claims brought against UTC," the Offer of Judgment was made by Carrier only, not by UTC, and it was "intended to settle all of Plaintiff's claims against Carrier," not UTC. (Dkt. 218-1.) Thus, the Offer of Judgment has no bearing on UTC's entitlement to fees.

Similarly, the Court is unpersuaded that its ruling on UTC's request for attorneys' fees pursuant to 29 U.S.C. § 1132(g), controls the Court's decision on UTC's present Motion filed pursuant to Section 448.08. Judge Howard's decision in *Embler v. Walker Elec. Sys. of Fla., Inc.*, 2008 WL 2338102 (M.D. Fla. June 3, 2008), does not seem to support Plaintiff's position. In that case, the court refused to award attorney's fees pursuant to Section 448.08 based, in part, on defendants' failure to appeal the order on their previous motion seeking sanctions that raised many of the same arguments, as well as on defendants' failure to provide additional information in support of their contention that plaintiffs' conduct merits an award of fees. *Embler*, 2008 WL 2338102 at *3. Judge Howard's order explicitly provided that the "Court's

19

determination not to exercise its discretion to award fees to Defendants pursuant to Florida Statutes section 448.08 is limited solely to the facts and circumstances of this case, and will not serve as precedent in any future lawsuits." *Id.* at *4 n.8.

Here, UTC's previous request for attorneys' fees was based on different statutory authority and arguments than its present Motion. UTC's previous request was based on 29 U.S.C. § 1132(g), which "allows a court to award fees to either party" without a presumption in favor of awarding the fees to the prevailing party. *Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). In contrast, UTC's present Motion seeks attorneys' fees pursuant to Section 448.08, which allows an award of fees to the prevailing party. *See* Fla. Stat. § 448.08 (1978). Further, this case does not involve a motion to amend and, therefore, the two Eleventh Circuit cases cited by Plaintiff are inapplicable. *See O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992) (addressing a district court's denial of a Rule 59(e) motion); *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (same). In sum, the Court has not already denied UTC's request for attorneys' fees based on Section 448.08.

The Court will now address Plaintiff's argument that UTC is not a

20

prevailing party under Section 448.08. (Dkt. 232.) "[T]he party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." *Moritz v. Hoyt Enters., Inc.*, 604 So.2d 807, 810 (Fla. 1992). "A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley*, 461 U.S. at 429 n.2 (1983); *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."). "[T]he term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." *Christiansburg*, 434 U.S. at 421.

The court must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421-22. "Decisive facts may not emerge until discovery or trial. *Id.* at 422. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.*

21

In *Mardan Kitchen Cabinets, Inc. v. Bruns*, the District Court of Appeal

of Florida affirmed the judgment of the trial court granting defendant's motion

to dismiss the complaint to foreclose a mechanic's lien and awarding

attorneys' fees to defendant pursuant to Section 713.29 of the Florida

Statutes.  312 So.2d 769, 769-70 (Fla. Dist. Ct. App. 1975).    [8]   The court

explained:

> Where the complaint fails to allege that the affidavit required by
> statute as a prerequisite to institution of suit has been filed, *such*
> *omission is jurisdictional in nature* and requires that the complaint
> be dismissed. . . . [Plaintiff's] proposed amendment to add the
> allegation that an affidavit had been supplied was futile since the
> affidavit was not timely.

*Id.* at 770 (emphasis added).[9]  In essence, plaintiff's jurisdictional omission

rendered the suit frivolous.

Similarly, in *Carpenter v. Metropolitan Dade County*, the District Court

of Appeal of Florida affirmed an award of attorneys' fees to defendant under

Section 448.08 following entry of summary judgment in its favor because

plaintiff's "claim actually constituted an action for back wages filed beyond the

---

[8] While the court stated that the defendant was the prevailing party as he
successfully resisted the action, the defendant in that case did more than resist the
action as he also filed a counterclaim. *See Bruns*, 312 So.2d at 770.

[9] The action was dismissed without prejudice because of the plaintiff's claim that
the complaint stated a cause of action in contract, even though the complaint contained
"no mention of breach of contract or claim for such damages." *Bruns*, 312 So.2d at
770.

applicable limitations period." 472 So.2d 795, 796 (Fla. Dist. Ct. App. 1985) (per curiam). The limitations issue rendered the suit frivolous. *See Tampa Bay Publ'ns, Inc. v. Watkins*, 549 So.2d 745, 747 (Fla. Dist. Ct. App. 1989) (stating that attorneys' fees can be awarded pursuant to Section 448.08 to "the successful employer when the trial court deems the circumstances are appropriate to impose costs on employees for frivolous claims" and citing to *Carpenter*, 472 So.2d at 796, in support).

Recently, in *Hingson v. MMI of Fla., Inc.*, the District Court of Appeal of Florida concluded that the trial court erred in awarding attorneys' fees to the defendants/employers where the employers did not file a counterclaim, did not prevail on their affirmative defenses, and were found in breach of the employment agreement. 8 So.3d 398, 402 (Fla. Dist. Ct. App. 2009). The court determined that the employers were not the prevailing parties on the significant issues in the breach of agreement claim. *Id.*

In the present case, the Court granted UTC's motion to dismiss, but permitted Plaintiff to re-file his claims against UTC. (*See* Dkt. 127.) UTC was dismissed as a party, but it did not obtain any affirmative relief. Unlike UTC, Plaintiff obtained judgment in the amount of $170,000.00 that settled the claims brought against Carrier, which were identical to the claims asserted

23

against UTC.

Under these facts, the Court does not believe that UTC is a prevailing party. *See Sherry Mfg. Co. v. Towel King of Fla.*, Inc., 822 F.2d 1031, 1035 n.5 (11th Cir. 1987) (stating that merely prevailing in one's defense "misconceives the notion of what constitutes a prevailing party," particularly where "the litigation was an almost complete success" for the other party).[10] Moreover, the basis for granting UTC's motion to dismiss was not a jurisdictional omission, a statute of limitations issue, or another basis that could render Plaintiff's claims frivolous. Therefore, the Court finds that an award of attorneys' fees and costs to UTC is not appropriate. Accordingly, Defendant UTC's Motion for Attorneys' Fees and Costs is due to be denied.

---

[10] In support of its argument that it is a prevailing party based on the dismissal of Plaintiff's claims, UTC also cites to the unpublished decision in *Pellegrino v. Koeckritz Dev. of Boca Raton, LLC*, 2008 WL 4753726 (S.D. Fla. Oct. 27, 2008). This Court is not bound by the decisions of other district courts and, particularly, by their unpublished opinions. Further, unlike the present case, the award of attorneys' fees and costs in *Pellegrino* was based on the parties' contract, which provided that "the prevailing party *shall* be entitled to recover all costs incurred, including reasonable attorneys' fees." 2008 WL 4753726 at *1 n.1 (emphasis added).

###   C.   UTC's Proposed Bill of Costs

In view of the Court's conclusion that UTC should not be awarded costs and reasonable attorneys' fees pursuant to Section 448.08 of the Florida Statutes and Plaintiff's Objection to UTC's Proposed Bill of Costs, UTC's Proposed Bill of Costs is due to be denied.

Accordingly, it is **ORDERED**:

1.   Richard Eugene Sears' Motion for Fees, Expenses, and Pre-Judgment Interest (**Dkt. 224**) is **GRANTED in part**. Plaintiff, Richard Eugene Sears, shall recover from Defendant, Carrier Corporation, pre-judgment interest in the amount of $48,685.42, out-of-pocket expenses in the amount of $12,242.83, and attorneys' fees in the amount of $346,381.50.

2.   Defendant Carrier Corporation's Agreed Motion to Review Clerk's Action (**Dkt. 230**) is **GRANTED**. The Bill of Costs (**Dkt. 228**) is **VACATED**. The Clerk is **DIRECTED** to tax costs in the amount of $26,478.49 for Plaintiff, Richard Eugene Sears, and against Defendant, Carrier Corporation.

3.   Defendant United Technologies Corp.'s Motion for Attorneys' Fees and Costs (**Dkt. 226**) is **DENIED**.

4.    UTC's Proposed Bill of Costs (**Dkt. 227**) is **DENIED**.

**DONE AND ORDERED** this 2nd day of March, 2010.

**HENRY LEE ADAMS, JR.**
United States District Judge

Copies to:  Counsel of Record

26